No. 22,701.

*In re* GEORGE L. HOSFORD, *Petitioner*.

SYLLABUS BY THE COURT.

MINOR—*Neglected Child—Committed to Children's Aid Society—Jurisdiction of District Court.* Where the juvenile court has, in accordance with the statute, committed a dependent and neglected child to the care of a children's aid society, a court which had previously granted a divorce to the parents of the child thereby loses jurisdiction to control its custody, and in a hearing of the application of one of the parents in relation thereto cannot require an officer of the aid society to disclose its whereabouts.

Original proceeding in habeas corpus. Opinion filed June 5, 1920. Petitioner discharged.

*E. L. Foulke,* of Wichita, for the petitioner.

*John Madden, C. E. Cooper,* and *John Madden, jr.,* all of Wichita, for the respondent.

The opinion of the court was delivered by

MASON, J.: George L. Hosford refused to answer a question asked of him as a witness in the district court of Sedgwick county, and was adjudged guilty of contempt and ordered committed to the county jail. He asks relief of this court by habeas corpus, on the ground that the order was made without jurisdiction. The matter is submitted upon the papers.

The district court ordered the petitioner to be committed until he should signify his willingness to answer the question, or until the expiration of six months, but stayed the execution of the order until the next day to allow time for the matter to be presented here. Within that period this court took jurisdiction, and by reason of these facts the sheriff was enabled to make a return, which he did, to the effect that he was not restraining the petitioner. While that is technically true, the merits of the legal questions upon which the validity of the order of commitment depends have been fully argued, and it would be futile to withhold action until a physical restraint should be imposed.

The petitioner is the general superintendent of the Christian Service League—a "children's aid society" as defined in the statute (Gen. Stat. 1915, § 6373)—to which has been intrusted by the juvenile court of Sedgwick county the custody of Ethel Hook, minor daughter of George Hook and Myrtle Hook, who had been divorced by a decree of the district court of that county in April, 1918, the custody of the child having been awarded to the father. In February, 1919, the juvenile court made a finding that the child was dependent and neglected, and gave her to the care of the league. In November, 1919, the child's mother applied to the district court asking that the order made in the divorce case be modified, and that she be granted the custody of the child. Neither the league nor any one representing it was a party to the proceeding, but its superintendent, the petitioner, was present and testified that the child had been placed by the juvenile court with the league for adoption. The judge asked him where the child was, and he declined to answer, on the ground of privilege and want of jurisdiction in the court, such refusal being the basis of the order adjudging him to be in contempt. The court awarded the custody of the child to the mother, but made no order in that respect upon the petitioner or the league.

The petitioner represents that the usefulness of such societies as that which he represents will be seriously impaired if parents of children committed to their care are permitted as a matter of right to be advised of their whereabouts. He contends that the continuing jurisdiction of the district court to control the custody of a minor child of the parties to a divorce suit ceases when the action of the juvenile court is properly invoked with respect to it; that the power exercised in such a case by the juvenile court is one specially delegated to it by the state in its capacity as supreme guardian of all minors, and supersedes even that of another court which had already acquired jurisdiction to determine the most suitable custodian of a child, whether depending upon the conflicting claims of its parents or upon its own welfare. So far as the matter is affected merely by the claims of father or mother little difficulty is presented.

"The most striking demonstration of the supremacy of the guardianship of the state over that of the parent is furnished by the statutes under which children cruelly treated, abandoned or being brought up in

*In re* Hosford.

ways of vice are taken from the parents by administrative proceedings instituted by the state, and committed to public or charitable institutions." (20 R. C. L. 600.)

In 1901, prior to the enactment of the juvenile court law, the legislature authorized dependent or neglected children to be placed under the care of children's aid societies, and made provision against subsequent interference by the parents, in these words:

"No parent or guardian or other person who by instrument of writing surrenders or has heretofore surrendered the custody of a child to any children's aid society, or institution shall thereafter, contrary to the terms of such instruments, be entitled to the custody of or any control or authority over or any right to interfere with any such child, and these same conditions shall prevail where a child is or has been delivered to such children's aid society or institution by action of any proper court." (Gen Stat. 1915, § 6378.)

Although the provision of the statute giving the district court power to modify an order made in a divorce case regarding the custody of the children (Gen. Stat. 1915, § 7580) is a part of the revised code of civil procedure adopted in 1909, it is a reënactment of a section of the original code (Gen. Stat. 1868, ch. 80, § 645) and is to be regarded as a continuation thereof (Gen. Stat. 1915, § 10973, subdiv. 1), yielding so far as there may be any conflict to the later expression of the legislative will.

The continuing jurisdiction of a court which has granted a divorce to supervise the custody of minor children of the parties cannot be interfered with by another court which except for such retained jurisdiction would have authority under a writ of habeas corpus to make the same inquiry and grant the same relief. (*In re Petitt,* 84 Kan. 637, 114 Pac. 1071.) The juvenile court, however, stands upon a very different footing. It is specifically given jurisdiction "of all cases concerning dependent, neglected and delinquent children." (Gen. Stat. 1915, § 3065.) The conditions under which it may take control of a child and the manner in which it may exercise it are quite different from those existing in the case of any other tribunal. It is of course inferior to the district court, to which an appeal in some instances may be taken from its rulings (Gen. Stat. 1915, § 3076), and which may exercise supervision and control over it to prevent and correct errors and abuses.

(Gen Stat. 1915, § 2957.)   But this appellate and supervising power must be exercised directly and according to some prescribed method.   The district court has no authority, merely by reason of its broader powers, to disregard the action of the juvenile court.   If, for instance, a boy whose custody had been awarded by the district court to his father should by reason of some serious delinquency be regularly committed by the juvenile court to the state reformatory, assuming that to be authorized by the statute (Gen. Stat. 1915, §3073), or—as often happens—to the state industrial school, it would seem quite out of keeping with the general plan of administering such matters if the duration of his stay there could be controlled by the district court in virtue of its reserved jurisdiction, and that situation would not be essentially different from the one here presented, so far as relates to the jurisdiction of the district court, for even such a commitment would not be for the purpose of punishment, but for the welfare of the child.   (*In re Turner*, 94 Kan. 115, 145 Pac. 871.)

It is not necessary to the protection of a minor that its control when regularly assumed by a court having only specially conferred powers, or by an administrative body, shall be subordinate to that of a court of general or superior jurisdiction. Much unfavorable criticism of the legal system of the state of Georgia was occasioned a few years ago by the refusal of its supreme court, on the ground of want of power, to order the release from custody of a ten-year-old boy—Ollie Taylor. (*Taylor v. Means*, 139 Ga. 578.)   The decision was widely interpreted as a holding that the boy had been sentenced to penal servitude until he should attain his majority, for the offense of having stolen a bottle of soda water, and that the law afforded no means of relieving him from that penalty. The facts appear to be that although the language of the criminal law was to some extent employed, for practical purposes he was merely committed for his own good to a county industrial farm, and the want of jurisdiction in the superior or supreme court to interfere arose from the fact that the legislature had empowered another tribunal—the authorities having charge of the farm—to decide when his own interests and the public welfare would be best subserved by his discharge.   Moreover, the application for his release which was

denied by the supreme court was made by his father, apparently for the selfish purpose of obtaining a material benefit from his services.   (50 Congressional Record 960; 4 Journal of Criminal Law and Criminology 171.)   We are of the opinion that in the present case when the juvenile court intrusted the care of the child to the children's aid society, the cutting off of the right of the parents to its control involved also the extinguishment of the authority of the district court, derived from the retention of the jurisdiction acquired through the divorce action, to regulate the matter—an authority which originated in a consideration of the conflicting claims of the parents, although in its exercise the welfare of the child was of primary importance.   As the court for this reason had no power to make an order affecting the custody of the child, there was no basis for an inquiry as to its whereabouts.

This view seems in accordance with that taken by the courts so far as the question has been discussed by them.   In *Miller v. Higgins,* 14 Cal. App. 156, it was held that a court which had granted a divorce could not be divested of jurisdiction over a minor child of the parties by its secret removal to another county where by fraudulent concealment of the facts an order of adoption had been procured.   But in the opinion in that case the court of appeals expressly recognized the force of an earlier decision of the supreme court (*Younger v. Younger,* 106 Cal. 377), to the effect that "Where the adoption was regularly had, the status of the child was changed, and it no longer remained the child of the parties to the marriage, but became the child of another, and its relation to its natural parents ceased, and the jurisdiction of the divorce court was terminated." (p. 163.)   The mere passage of a juvenile-court act has been held not to affect the jurisdiction of the court trying a divorce suit over the minor children.   (*McDaniel v. Youngblood,* [Ala.] 77 So. 674.)   But it has been held that the pendency of a divorce case in which the court as between the parties could determine the custody of their minor child does not prevent the juvenile court from taking charge of it on the ground of its being neglected.   (*Brana v. Brana,* 139 La. 306.)   The scope of that decision is fairly indicated by these paragraphs of the syllabus:

"The decision of the juvenile court, vested with jurisdiction to determine when a child answers the description of a neglected child given

by the Constitution is not to be challenged except in a direct action brought for that purpose, or in some appellate tribunal; and hence is not subject to inquiry in the civil district court, but must there be assumed to be well founded. (Syl. ¶ 3.)

"The jurisdiction of the juvenile court as to the custody of neglected children is quasi criminal, operating as between the state and the parents or as between the child and the state, and if the civil district court, having civil jurisdiction of a suit for separation from bed and board, had awarded the child to the mother, there was nothing to prevent the juvenile court from finding that the child was neglected and from taking it from the parent who was neglecting it, or from both parents, as in that matter its jurisdiction was not concurrent with the civil district court." (Syl. ¶ 5.)

The opinion refers to an earlier case, where the father of a child sought without success to defeat the jurisdiction of the juvenile court over it on the ground that it was not neglected and that it was subject to the control of the district court in an action for separation from bed and board, the supreme court saying:

"The juvenile court and the court in which a suit in separation from bed and board is pending between the parents of a child may have simultaneous, though not concurrent, or conflicting, jurisdiction of the custody of the child; that of the juvenile court to be exercised as between the state, or, so to speak, the child, and the parents of the child; and that of the other court to be exercised as between the two parents. In the instant case, on the assumption of the child Iska McCloskey not being a neglected child within the meaning of that term as defined by the constitution (article 118, § 3), the juvenile court is utterly without jurisdiction of her custody, and the civil district court has exclusive jurisdiction. On the contrary assumption, the juvenile court has jurisdiction.

"With the facts of the case this court has nothing to do, but must assume that the learned judge of the juvenile court exercised jurisdiction because he found upon the facts that the said child of relator was a neglected child within the meaning of that term as expressly, carefully, and explicitly defined by said article of the Constitution." (*State v. McCloskey*, 136 La. 739, 741.)

During the proceedings in the district court in the present case a suggestion was made challenging the constitutionality of the juvenile-court act. No specific basis for a doubt in that regard was indicated, and the validity of the statute is not attacked in the brief of the respondent. It has been sustained against all the attacks heretofore made upon it in this court (*In re Turner*, 94 Kan. 115, 145 Pac. 871), and the constitu-

*In re* Hosford.

tionality of similar statutes has been elsewhere upheld in other. respects. (Notes, 18 L. R. A., n. s., 886, and 45 L. R. A., n. s., 908, 913.)

The question already determined is that upon which the case has been principally argued, and as the conclusion reached requires the discharge of the petitioner there is no occasion for undertaking to determine in what circumstances an adoptive parent, or one standing in substantially that relation, should be excused from giving information at the demand of a natural parent as to the whereabouts of an adopted child.. It is obvious that under some conditions the welfare of the child may be promoted by the absolute severance of all connection with its parents, harsh as such a measure may seem. Persons in every way adapted to the responsibility, when considering whether or not they should adopt it, might not unreasonably be influenced in their decision by the question whether they could rely with entire confidence upon protection from any attempt of the natural parents to reëstablish relations with it, and this might be insured only by keeping them in ignorance of where it was to be found. In a case in which the court denied the right of parents to be informed of the whereabouts of their two children who by agreement had been turned over to an institution known as the Temporary Home for the Destitute, the court said:

"In some of our public institutions it has been deemed expedient to keep parents in ignorance of the place where homes have been found for their children, on account of the disposition often manifested to visit them and excite uneasiness and discontent in their minds. Such influences may be feared in this case, and there may be just ground for the suggestion made by the respondent's counsel, that if the former character of the father were made known among the present schoolmates and associates of the children, it might cause annoyance and injury to them at their present tender age. The children ought not to be thus exposed, unless the judge who hears the cause shall have some ground to believe that their welfare requires it." (*Dumain and wife v. Gwynne*, 92 Mass. 270, 275.)

The petitioner is discharged.