(No. 32670.

THE PEOPLE *ex rel.* Lila F. Houghland, Petitioner, *vs.* CHARLES W. LEONARD, Superintendent of the Illinois State Training School for Boys, Respondent.

*Opinion filed May 20, 1953.*

ROBERT M. BELL, and BURTON H. STONE, both of Rock Island, for petitioner.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, JOHN T. COBURN, and EDWARD M. WHITE, of counsel,) for respondent.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

This original petition for *habeas corpus* raises broad questions concerning the validity of the provisions of the Juvenile Court Act which deal with jurisdiction over proceedings arising under that statute, as well as narrower

jurisdictional questions arising from circumstances peculiar to this case.

The petition is prosecuted by the mother and next friend of Kenneth Moskaloff, a minor, who is held in custody by the superintendent of the Illinois Training School for Boys under a warrant of commitment issued by the county court of Rock Island County. Kenneth's parents were divorced in 1944 by a decree of the circuit court of Rock Island County. The divorce decree awarded custody of Kenneth to his mother. In 1945, the county court of Rock Island County declared him a "dependent" under the Juvenile Court Act, and appointed a guardian of his person. After vicissitudes not necessary to detail, the county court in 1951 found Kenneth to be a "delinquent" and ordered him placed in the Illinois Training School for Boys at St. Charles. Respondent, Charles N. Leonard, the superintendent of that school, was appointed guardian of Kenneth's person.

Petitioner first attacks the validity of section 2 of the Juvenile Court Act (Ill. Rev. Stat. 1951, chap. 23, par. 191,) by which circuit and county courts are given "original jurisdiction in all cases coming within the terms of" that act. It is argued that this statutory grant of jurisdiction is invalid because by section 20 of article VI of the constitution exclusive jurisdiction over the "appointment of guardians" is vested in probate courts in counties in which such courts exist. Section 18 of article VI of the constitution provides that county courts shall have original jurisdiction in all probate matters, the settlement of estates of deceased persons, the appointment of guardians and conservators and settlement of their accounts, and in all matters relating to apprentices. By section 20 of article VI the General Assembly is authorized to establish probate courts and it is provided that such courts when established shall have jurisdiction over the matters enumerated above. A probate court has been established in Rock Island County, pursuant to statute.

Petitioner contends that by sections 18 and 20 of article VI, exclusive jurisdiction over all matters of guardianship is placed in the probate courts in counties in which such courts have been established, and in county courts in all other counties. On this basis it is argued that the Juvenile Court Act is invalid insofar as it attempts to vest jurisdiction over proceedings under the act in circuit courts, and that since there is a probate court in Rock Island County, only that court can have jurisdiction to appoint a guardian over the person of petitioner's son.

The argument thus made is based upon decisions holding that "upon the establishment of a probate court in a particular county, the county court of such county is at once, by operation of law, deprived of its jurisdiction in matters of probate, and in all other matters over which probate courts are given jurisdiction, * * *." (*Klokke* v. *Dodge,* 103 Ill. 125, 135; *Meserve* v. *Delaney,* 105 Ill. 53; *Snyder* v. *Snyder,* 142 Ill. 60; *Bley* v. *Luebeck,* 377 Ill. 50.) Because the constitution grants probate courts jurisdiction over "the appointment of guardians," and because the Juvenile Court Act provides for the appointment of guardians, it is argued that jurisdiction of proceedings under the act can be vested only in probate courts, or in county courts in those counties in which there is no probate court.

The Juvenile Court Act is a codification of the ancient equitable jurisdiction over infants under the doctrine of *parens patriae.* (*People ex rel. Wallace* v. *Labrenz,* 411 Ill. 618.) Historically, courts of chancery, representing the government, have exercised jurisdiction over the person and property of infants to insure that they were not abused, defrauded, or neglected. (*Witter* v. *County Comrs.* 256 Ill. 616; *Cowles* v. *Cowles,* 3 Gilm. 435.) As has been pointed out, one method by which this general equity power over infants was exercised has been the appointment of guardians. (*Thomas* v. *Thomas,* 250 Ill. 354, 364; *Hohen-*

*adel* v. *Steele*, 237 Ill. 229.)· But the broad objectives of the Juvenile Court Act can be narrowed to an identity with the appointment of a guardian only by mistaking method for purpose.

The very title of the act suggests that it encompasses a subject far more pervasive than the simple appointment of a guardian. That title is: "An Act relating to children who are now or may hereafter become dependent, neglected or delinquent, to define these terms, and to provide for the treatment, control, maintenance, adoption and guardianship of the persons of such children, and to give to the courts having jurisdiction of cases coming within this Act, jurisdiction to proceed with the prosecution and punishment of the persons contributing to the dependency, neglect or delinquency of children." Nor is the fact that the power authorized by the act is far more pervasive than is contemplated by the customary appointment of a guardian of a minor contradicted by petitioner's assertion that the act "basically functions through the instrumentality of a 'guardianship of the person' of dependent, neglected, and delinquent children." That observation simply underscores the mistaken identification of method with purpose which characterizes petitioner's argument.

The argument which identifies "the appointment of a guardian" with proceedings under the Juvenile Court Act entirely overlooks the concern of that act for the delinquent child as well as the child who is dependent. Concern with juvenile delinquency largely motivated the establishment of juvenile courts. "It was believed that if children were separated from adult offenders and the judge dealt with the problems of 'erring children' as a 'wise and kind father' —as the statute creating the juvenile courts sometimes directed—wayward tendencies would be checked and delinquency and crime prevented or reduced. Under these laws the child offender was regarded not as a criminal but as a delinquent, 'as misdirected and misguided and needing aid,

encouragement, help and assistance.' " (Abbott, The Child and the State, vol. 2, pp. 331-332, University of Chicago Press, 1938.) This court expressed the same thought when it said that the purpose of the Juvenile Court Act is "to extend a protecting hand to unfortunate boys and girls who, by reason of their own conduct, evil tendencies or improper environment, have proven that the best interests of society, the welfare of the State and their own good demand that the guardianship of the State be substituted for that of natural parents." *Lindsay* v. *Lindsay,* 257 Ill. 328, 340.

To demonstrate the difference between an ordinary proceeding for the appointment of a guardian by a probate court and the deeper thrust of the jurisdiction exercised under the Juvenile Court Act, it is necessary to enumerate only a few of the points of difference between the two proceedings. The statutory provisions of the Probate Act with respect to guardians establish no means for effective supervision of the conduct of the guardians. (Ill. Rev. Stat. 1951, chap. 3, pars. 283-298a.) The Juvenile Court Act, on the other hand, provides for probation officers, for the placing of children in homes, and for other appropriate alternatives to the simple custodianship of a guardian. (Ill. Rev. Stat. 1951, chap. 23, pars. 195, 196, 198.) The interest of the State in the entire proceeding is made explicit in section 9 of the Juvenile Court Act. (Ill. Rev. Stat. 1951, chap. 23, par. 198.) By way of contrast, in a guardianship proceeding in the probate court a minor has the right to nominate his guardian. (Ill. Rev. Stat. 1951, chap. 3, par. 288.) And, finally, section 9a of the Juvenile Court Act gives that court discretion to permit the child to be proceeded against "in accordance with the laws that may be in force in this State governing the commission of crimes or violations of city, village, or town ordinance." (Ill. Rev. Stat. 1951, chap. 23, par. 199.) Where this is done, the petition under the Juvenile Court Act is dismissed. There is no

comparable authority in the probate court to make a preliminary determination as to whether the conduct of the minor is to be treated as of a criminal character or whether the petition should be entertained.

Further differences could be pointed out. Those enumerated, however, are, in our opinion, sufficient to refute the argument advanced by petitioner that the entire future development of the doctrine of *parens patriae* was intended to be committed irrevocably and exclusively to county or probate courts by the constitutional references to "the appointment of a guardian."

Petitioner next contends that the continuing jurisdiction of the circuit court over the custody of the minor child under the decree of divorce entered in February of 1944 precluded the subsequent assumption of jurisdiction by the county court of the proceeding brought under the Juvenile Court Act. It is well settled that while the circuit court initially awarded custody of the child to the petitioner, the jurisdiction of that court continued for the purpose of making, from time to time, such orders relating to the child's care, custody, and support as reason and justice might require. (*Jarrett* v. *Jarrett, ante;* p. 126; *Nye* v. *Nye,* 411 Ill. 408; *Kelley* v. *Kelley,* 317 Ill. 104; *Stafford* v. *Stafford,* 299 Ill. 438.) Petitioner regards the county court's assumption of jurisdiction of the Juvenile Court Act proceeding involving Kenneth as an infringement of this continuing jurisdiction. As a consequence, petitioner states, section 2 of the Juvenile Court Act violates sction 12 of article VI of the constitution, which gives the circuit court jurisdiction in all matters of equity.

The argument raises two questions: (1) May a county court be given jurisdiction of proceedings under the act; and (2) If so, may that jurisdiction be exercised despite the continuing jurisdiction of a circuit court under a decree of divorce? The first question is readily answered in the affirmative. By section 18 of article VI the county court

is vested with original jurisdiction over the subjects there enumerated, "and such other jurisdiction as may be provided for by general law." The latter clause authorizes the General Assembly to vest equity jurisdiction in county courts; and section 12 of article VI is not to be construed to confer exclusive jurisdiction in all equity matters upon the circuit courts. (*State of Illinois* v. *Aiello,* 317 Ill. 159.) It follows that county courts may validly exercise jurisdiction over proceedings under the act.

The other aspect of petitioner's second contention rests upon an assumed identity between the award of custody in a divorce action and a proceeding under the Juvenile Court Act. But the dissimilarity between the issues presented by the custody problem arising in a divorce action and those raised in a proceeding under the Juvenile Court Act is readily seen. The divorce court is primarily concerned with determining the fitness of the parents for the purpose of awarding the custody of the minor child, with a view to serving the best interests of the child. (Ill. Rev. Stat. 1951, chap. 40, par. 14; *Nye* v. *Nye,* 411 Ill. 408; *Buehler* v. *Buehler,* 373 Ill. 626.) The conduct of the parents and their relative suitability is the typical issue. The hearing under the Juvenile Court Act, however, involves an inquiry into the behavior of the child for the purpose of determining whether the child's conduct requires the active intervention of the State. That intervention may consist only of periodic visitations to the family home by a probation officer; but in more serious cases it may require actual commitment to a State institution. (Ill. Rev. Stat. 1951, chap. 23, pars. 193, 196, 198.) The issue is not which parent should have custody, but whether the interest of the State requires that neither parent have custody.

Although the question is one of first impression in this State, other courts have concluded that the jurisdiction exercised by a divorce court in awarding the custody of a child is fundamentally different from that exercised by

a juvenile court. The precise question was raised in *In re Hosford*, 107 Kan. 115, 190 Pac. 765, in which the court said: "The juvenile court, however, stands upon a very different footing. It is specifically given jurisdiction 'of all cases concerning dependent, neglected, and delinquent children.' * * * The conditions under which it may take control of a child and the manner in which it may exercise it are quite different from those existing in the case of any other tribunal." The conclusion reached by the Kansas court is in full agreement with the majority view. See cases collected at 11 A.L.R. 147 and 78 A.L.R. 317.

The basic differences in the two types of proceedings justify the conclusion that the prior and continuing jurisdiction of the circuit court over Kenneth Moskaloff, stemming from the original decree of divorce, did not prevent the county court from assuming jurisdiction of the proceeding under the Juvenile Court Act. Inasmuch as the circuit court never did exercise jurisdiction under the act over Kenneth, there can be no constitutional objection to the county court's initial exercise of such power over the person of Kenneth. Section 2 of the Juvenile Court Act does not impinge upon the jurisdiction granted to circuit courts by section 12 of article VI of our constitution.

Concurrent jurisdiction over an identical subject matter in several courts is no novelty in our law. The process by which the courts of King's Bench, Common Pleas, and Exchequer acquired, through the use of fictions not permitted to be disputed, concurrent jurisdiction over most of the common-law actions is commonplace to law students. (Plucknett, Concise History of the Common Law, 2d ed., pp. 153, 156.) The problems which arise from the existence of concurrent jurisdiction are ordinarily solved by judicial comity,—as they have been solved in the very area of the law with which we are now concerned for more than fifty years. That concurrent jurisdiction is undesirable, and gives rise to problems which a more orderly scheme of

court organization would eliminate, is immaterial. The problem for us is not the formulation of an ideal judicial system but the determination of jurisdictional boundary lines in a system in which concurrent jurisdiction is a familiar phenomenon.

Petitioner next asserts that a comprehensive reading of section 2 of the Juvenile Court Act, which vests jurisdiction in the circuit and county courts, with section 3, discloses violations of the uniformity provisions of section 29 of article VI of the constitution. Those provisions require that all laws relating to courts shall be general and of uniform operation and that the jurisdiction and powers of all courts of the same class or grade shall be uniform. Section 3 of the Juvenile Court Act provides that "In counties having over 500,000 population the judges of the circuit court shall, at such times as they shall determine, designate one or more of their number whose duty it shall be to hear all cases coming under this Act." Ill. Rev. Stat. 1951, chap. 23, par. 192.

Petitioner's objection takes on several forms. First it is insisted that because it fails to give jurisdiction of proceedings under the Juvenile Court Act to the superior court of Cook County and to the city courts throughout the State, section 2 of the act is unconstitutional. Section 2 does not expressly confer jurisdiction upon the superior court of Cook County. But we have consistently held that where special statutory jurisdiction is conferred upon circuit courts, the superior court of Cook County, though not specially designated, acquires identical jurisdiction under the statute. (*People ex rel. Donovan* v. *Sweitzer,* 330 Ill. 426; *Cobe* v. *Guyer,* 237 Ill. 516; *Jones* v. *Albee,* 70 Ill. 34.) Since section 2 thus operates to confer upon the superior court authority to hear these cases, to this extent the constitutional objection fails.

Petitioner then urges that the city courts, in the exercise of continuing jurisdiction of the custody provisions of

divorce decrees, are courts of the same class or grade as circuit courts, and that under our holding in *People ex rel. Bernat* v. *Bicek,* 405 Ill. 510, statutory provisions as to the exercise of such jurisdiction must be uniform. In view of the basic differences between divorce-custody hearings and proceedings under the act, it is clear petitioner has missed the mark. Petitioner concedes that city courts are not of the same class and grade as circuit courts. The conclusion is inescapable that jurisdiction of the more serious matter of dependency or delinquency may be vested in the circuit courts without encountering any constitutional requirement that like powers be given to city courts.

Finally, petitioner asserts that section 3 cannot be read otherwise than to vest the circuit court of Cook County with exclusive jurisdiction of proceedings arising under the act in that county. She maintains that this section operates to deprive both the superior and county courts of Cook County of jurisdiction in these matters, contrary to the uniformity requirements of article VI, section 29. In support of her position, petitioner relies on *People ex rel. Florek* v. *Fenelon,* 224 Ill. App. 213, and states that the practice in Cook County for over fifty-three years has recognized the exclusive jurisdiction of the circuit court of that county. We need not express an opinion as to the correctness of the view expressed in the *Fenelon case,* nor need we consider whether the alleged practice is more than a common-sense application of judicial comity, for we are of the opinion that the point is not properly raised in this proceeding, originating in Rock Island County. Moreover, even if petitioner's objections were valid, only section 3 of the act would fall; the balance of the act would not be affected. *Myers* v. *People,* 67 Ill. 503; *People* v. *Dickelman,* 304 Ill. App. 482.

Sections 2 and 3 of the Juvenile Court Act, therefore, do not contravene the uniformity requirements of article VI, section 29.

The last contention is that the amended decree of 1951 which changed the status of Kenneth Moskaloff from a "dependent" to a "delinquent" and provided for respondent's substitution as guardian of the person of Kenneth, is void for lack of proper notice to petitioner and to Kenneth's father.

The act specifically provides for original service of process. (Ill. Rev. Stat. 1951, chap. 23, par. 194.) This original notice to the parents is jurisdictional. (*People ex rel. McEntee* v. *Lynch,* 223 Ill. 346.) Upon a finding that the child is dependent, neglected, or delinquent and the appointment of a guardian over the person of the child, the guardianship under the act continues until the court otherwise directs. (Ill. Rev. Stat. 1951, chap. 23, par. 201.) The statute, however, makes no provision with respect to further notice to the parents during the continuing jurisdiction of the court over the child. Petitioner insists that a requirement of notice to the parents of contemplated changes in guardianship or status must be read into the act. Upon this record, however, petitioner is in no position to attack the amended decree for want of notice. In her motion to vacate that decree, petitioner expressly admits that she and her son were present at the hearing which culminated in the finding of delinquency. Moreover, petitioner's motion to vacate the delinquency decree attacked the merits of that proceeding. Petitioner's actions constitute a general appearance and a waiver of process. *People ex rel. Akin* v. *Southern Gem Co.* 332 Ill. 370; *Bangor Furnace Co.* v. *Magill,* 108 Ill. 656.

It is, therefore, the order of this court that the writ of *habeas corpus* be quashed, and that Kenneth Moskaloff be remanded to the custody of the respondent, Charles W. Leonard, Superintendent of the Illinois State Training School for Boys.                                    *Writ quashed.*