402 P.2d 52

Application of David Rex Spaulding for a Writ of Habeas Corpus.

David Rex SPAULDING, Plaintiff-Respondent,

v.

CHILDREN'S HOME FINDING AND AID SOCIETY OF NORTH IDAHO, INC., and Spencer B. Wheatley, Defendants-Appellants.

No. 9474.

Supreme Court of Idaho.

May 14, 1965.

Randall & Bengtson, Roy E. Mosman, Lewiston, for appellant.

Owen L. Knowlton, Lewiston, for respondent.

SMITH, Justice.

Appellants, Children's Home Finding and Aid Society of North Idaho, Inc., a charitable association, and Spencer B. Wheatley, the superintendent, are hereinafter sometimes referred to as the Children's Home.

Appellant Children's Home has appealed from an order of the district court grant-ing respondent a writ of habeas corpus, which proceeding, upon hearing, resulted in an order of the court removing the custody of respondent's two minor children, Michael David and Donald Keith Spaulding, from the Children's Home and granting their custody to respondent.

The facts, which are not in dispute, are set forth in some detail in order to clarify the issues.

The district court in Nez Perce County, in civil case No. 14146, on December 3, 1955, granted a decree of divorce to Jean W. Spaulding, the plaintiff in said action, from her husband David Rex Spaulding, the defendant therein, who defaulted in the action. The court, by the decree, awarded custody of the two minor children, Michael David and Donald Keith, issue of the marriage, to their mother, Jean.

December 6, 1962, one Rose M. Wahl petitioned the Nez Perce County probate court alleging that the mother had abandoned the children and that they were dependent upon the public for support; that the children fell within the provisions of I.C. § 16–1601(2) (b), to the effect that a charitable society organized for the purpose of improving the condition of homeless, neglected or abused children may take custody of minor children when they have been abandoned by their parents, and are dependent on the public for support. The court thereupon entered an order of tempo-

rary commitment, placing the children in the possession and charge of the Children's Home.

May 7, 1963, one Harold R. Hanson filed a similar petition in the Nez Perce County probate court alleging that the children's parents had wilfully failed to take reasonable care of the children and would probably continue in failing to care and provide for them; and that the children should be placed with a suitable guardian or a children's aid society. Notice of a hearing of the proceeding was mailed to both the father, who then resided in Billings, Montana, and to the mother, who then had married one Dowdy, and whose last known address was in Spokane, Washington; also was published in a newspaper of general circulation in Lewiston, Nez Perce County. The hearing was held as noticed, June 6, 1963, in the Nez Perce County probate court. Respondent, although present in the courtroom at the time of the hearing, was not represented by counsel, was not called as a witness, and took no part in the proceeding. The probate court file in such proceeding does not contain any record of evidence adduced thereat.

At the conclusion of the hearing the probate court found that the two minor children had been wilfully "neglected for six months by their parents," are dependent upon the public for support, and that the parents will probably continue in failing to

care and provide for them. Then followed the court's order, dated June 6, 1963, shown filed July 18, 1963, that the children be "removed from the custody of and control of their parents, David Spaulding and Jean Dowdy, and committed to the care and custody of the Children's Home * * * subject to the provisions of Idaho Code, Section 16–1608, which prohibits the making of an order for permanent adoption until after the expiration of three (3) months after the date of this order."

Thereafter on October 7, 1963 respondent filed in the Nez Perce County district court, a petition for modification of the divorce decree in civil case No. 14146, praying that he be awarded the custody of the minor children. On the same date and in the same action, respondent filed a petition for a writ of habeas corpus, directed to the Children's Home, in aid of compelling it to deliver the custody of the children to respondent. In both his petitions, respondent particularly alleged material and substantial changes in conditions of the parties since the time of entry of the decree of divorce, i. e., that the mother, who by the decree was awarded the custody of the children, had abandoned them, and that respondent, the natural father of the children, is a fit and proper person and is entitled to their custody; he also alleged that the children are not neglected or delinquent, and that the Children's Home unlawfully detains them.

The district court issued the writ, setting a return day, for the purpose of inquiring into the "cause of detention and fully inquiring into the custody and restraint of the said minors." Appellant Children's Home, in its return, alleged that it had custody of the children under the probate court's order of June 6, 1963, and that the children had been committed to it prior to the issuance of a writ of habeas corpus.

Respondent, in his traverse to the return, alleged that the mother was awarded the custody of the children by the divorce decree entered December 3, 1959; that thereafter unknown to respondent she had abandoned the children; that unknown to respondent the children were placed with the Children's Home; that the Home did not, nor did its superintendent, inform respondent that the children had been deserted, or were neglected, or were public dependents; that immediately upon learning the whereabouts of the children, respondent traveled to Lewiston to take the children with him, but that the Home refused to allow him to take the children on the ground "that the custody of the children was in the mother and that he had no rights over the children"; that upon subsequent occasions respondent sought to take the children with him but was refused, and that upon his last visit, was refused permission to see them; also that his petition, for modification of the divorce decree requesting custody of the children, was pending in the district court. Respondent additionally alleged that although he was present during the hearing held June 6, 1963, in the probate court, he was not aware of the nature of the proceeding and did not understand that an order could be entered depriving him of the custody of his children. He then alleged that at all times since learning of the abandonment of the children he has been ready, willing and able to care for and support them; that the children are not neglected, dependent or delinquent, and that as their father, he is a fit and proper person to be awarded their custody.

The Children's Home then filed its motion to quash the writ on the ground that the district court was without jurisdiction of the subject matter, and that its jurisdiction had been terminated by the order of the probate court, dated June 6, 1963, shown filed July 18, 1963.

Trial was had before the district court on December 3, 1963, on both the petition for modification and the writ of habeas corpus. Both parties were represented by counsel.

Respondent testified that he lived in Billings, Montana, where he had employment. He continued living there after his wife obtained the divorce. He knew Mrs. Spaulding was living in Lewiston, Idaho, with the children in December, 1959, because she telephoned, "to send her some money to come home." Respondent testi-

fied that he sent her more money than she requested, and then stated, "* * * she didn't show up at home when she promised to. Then I started to trying to find out where she was and where the children was through the sheriffs' departments of three states." In December, 1961, he located the children in the Children's Home in Lewiston, and visited with them; also talked with Mrs. Wahl at the Home. He wanted to take the children with him "to take them home," but Mrs. Wahl would not let him do so; "she thought the mother would straighten out and take care of the children." The Home "apparently recognized the custody as still being in the mother." Respondent then stated that as of December, 1963, he had made five trips to Lewiston and to the Children's Home. Those in charge of the Home permitted him to see the children on his first two trips; but not after the second trip during April, 1962.

Respondent further testified that although he was present in the courtroom at the time of the hearing in the probate court, he was not represented by counsel, and did not understand the nature of the proceedings. He did not hear testimony concerning himself, or about alleged refusal on his part to take the children and care for them; nor was he questioned by anyone at the hearing.

Appellant's only evidence offered and received in the district court consisted of the probate court file relating to the children, as "the official record of said proceedings in the probate court of Nez Perce County," to and including the order of the probate court dated June 6, 1963, placing the custody of the children in the Home. Such probate court record fails to show any record of any evidence, either oral or documentary, taken in the probate court in support of appellant's unverified allegation that the parents had wilfully neglected to take reasonable care of the children for a period of six months, and attacking the fitness of the parents to have their custody. Simply stated the record of the probate court is devoid of any evidence to support its findings that respondent wilfully neglected the children for a period of six months prior to June 6, 1963, the date of the hearing; or that the children were dependent upon the public for support; or that respondent father is failing and probably will continue to fail to provide for the children because of his habits, or otherwise.

In regard to the foregoing the district court found, that after the mother had abandoned the children and they were placed in the custody of the Children's Home unknown to respondent, that the Home made no effort to apprise respondent that the children had been deserted, neglected or were dependent. The district court in its findings continued:

"* * * That petitioner learned through the police department of Walla

Walla, Washington, that the children were not with their mother and by instituting a search discovered that the children were in the custody of the Children's Home Finding and Aid Society of North Idaho of Lewiston, Idaho; that petitioner immediately upon learning that the children had been abandoned and were at the Childrens Home came to Lewiston to take the children home with him; that the said Childrens Home * * * refused to let petitioner take the children with him and advised petitioner that the custody of the children was in the mother and that he had no right over the children; that upon subsequent occasions petitioner came from Billings, Montana, where he resided and sought to take the children with him but was refused and upon occasion of his last visit was refused permission to visit the children.

\* \* \* \* \* \* .

"That petitioner [respondent] was present at the hearing in the Probate Court on the sixth day of June, 1963, but was not represented by counsel and did not understand the nature of the proceeding; that at the hearing no evidence whatsoever was adduced concerning his alleged neglect or abandonment of the children nor was any evidence whatsoever adduced concerning his unfitness to have the children upon any ground. That petitioner has at all times since learning of the abandonment of the children by their mother been ready, willing, able and anxious to take the said children into his custody and care for and support them.

"That the said minors are not neglected, dependent or delinquent and the petitioner, as their natural father, is entitled to their custody and is a fit and proper person to be awarded their custody. That the present and future interests and welfare of the minor children would be best served by awarding their custody to their father."

The court then entered appropriate conclusions of law, followed by its order denying the motion to quash; sustaining the writ of habeas corpus; adjudging that it had jurisdiction of the parties and the subject matter of the action; that the fitness of respondent father to have the custody of the children had not previously been adjudicated; that respondent is a fit and proper person to be awarded, and is entitled to, the custody of his children; that the original divorce decree be modified by awarding the custody of the children to respondent on the ground that the mother had abandoned them; that the interests and welfare of the children would be best served by awarding their custody to respondent father; and that the Home is illegal-

ly detaining the children from respondent. The court then ordered delivery of the children to respondent, subject to temporary custody in the Home pending its appeal.

Appellant, Children's Home, by assignments of error, raises the issues: first, that the district court was without jurisdiction to hear and determine the issue of child custody in either the proceeding to modify the divorce decree or in the habeas corpus proceeding, contending that the jurisdiction of the district court to determine the custody of the children was terminated by the order of the probate court entered July 18, 1963; and second, that the habeas corpus proceeding constituted a collateral attack upon a probate court judgment, and that all presumptions are in favor of its regularity.

The jurisdiction of the probate court in the area of neglected or abandoned children originally stemmed from Idaho Const. Art. V, § 21 which provided, inter alia, for original jurisdiction of the probate court in matters of appointment of guardians. Such section of the Constitution was repealed at the November 1962 general election. Idaho Const. Art. V, § 2, as amended at that general election, authorized the legislature to prescribe the jurisdiction of the inferior courts but "[u]ntil provided by law, no changes shall be made in the jurisdiction * * * of existing inferior courts."

The legislature in 1919 enacted legislation in the area of neglected or abandoned children, later codified as I.C. Tit. 16, ch. 16, in effect at the time of the commencement of the probate proceeding by the Children's Home in the case at bar. Such legislation authorized a charitable or benevolent society to receive and care for neglected or abandoned children and to place them out for adoption and consent to their adoption; also to commence proceedings in the probate court for the purpose of taking any such child from its parents or custodian to the end that the child ultimately be placed under the guardianship of a suitable person or institution, or in the custody of a society organized under the laws of this state having as one of its objects the receiving, caring for and placing out for adoption and consenting to the adoption of children, or improving the condition of homeless or neglected children.

The original jurisdiction of the district court in divorce actions and related proceedings stems from Idaho Const. Art. V, § 20, which reads:

"The district court shall have original jurisdiction in all cases, both at law and in equity, and such appellate jurisdiction as may be conferred by law."

See also I.C. § 1–705. The legislature in 1875 enacted special legislation, which has remained unchanged, relative to children

involved in divorce actions; such legislation, codified as I.C. § 32–705, reads:

"Custody of children.—In an action for divorce the court may, before or after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same."

This Court in Piatt v. Piatt, 32 Idaho 407, 184 P. 470 (1919), had under consideration C.L., sec. 2663, now I.C. § 32–705, stating:

"While this statute is very broad in its terms, we think the discretion thereby conferred upon the trial court must be exercised with due regard, both to the well-being of the children of the marriage and the rights of the parents. The rights of a parent to the care, custody, and control of his child is a natural right, and is recognized by our statutes." Citing C.L., sec. 2699a, now I.C. § 32–1007. 32 Idaho at 412, 184 P. at 472.

 In the matter of divorce actions, a portion of I.C. § 32–715 remaining as originally enacted in 1875, reads:

"Exclusive original jurisdiction of all [divorce] actions and proceedings under this chapter is in the district court."

In Smith v. Smith, 67 Idaho 349, 357, 180 P.2d 853, 858 (1947), this Court stated:

"It is settled law in this jurisdiction that district courts have exclusive original jurisdiction of all actions and proceedings in divorce actions, and may make all necessary orders in such proceedings, including the custody of minor children."

The law is also well settled in this state that as regards the custody and welfare of a minor child of a marriage, involved in a divorce proceeding, the district court exercises continuing jurisdiction during the minority of the child. In Arkoosh v. Arkoosh, 66 Idaho 607, 611, 164 P.2d 590, 591, (1945), this Court said:

" * * * jurisdiction to determine all matters in any way affecting the welfare or best interests of the child continues in the [divorce] suit * * * until the child reaches his majority."

See also Smith v. Smith, supra; Holden v. Holden, 63 Idaho 70, 116 P.2d 1003 (1941); Sauvageau v. Sauvageau, 59 Idaho 190, 81 P.2d 731 (1938); Stewart v. Stewart, 86 Idaho 108, 383 P.2d 617 (1963).

The probate court proceeding relating to the Spaulding children involved the issues: whether the parents had neglected the children and will probably continue so to do; and whether the children should be placed under the guardianship of a suitable person or institution, or under the care. and custody of a society organized under the

laws of the state, having as one of its objects the receiving, caring for and placing out for adoption and consenting to the adoption, or of improving the condition of homeless or neglected children. I.C. § 16–1601 prior to repeal, S.L.1963, ch. 321.

The petition for modification and the habeas corpus proceeding filed in the divorce action involved similar and additional issues, i. e., whether the mother, who had been awarded the custody of the children by the original divorce decree, had abandoned them; whether the father was a fit and proper person to be awarded the custody of the children, and whether the Children's Home was entitled to their custody by reason of the proceeding had in the probate court culminating in the order filed therein July 18, 1963. Respondent in the habeas corpus proceeding raised the issue whether the probate court had jurisdiction to enter the order, awarding custody of the children to the Children's Home.

Appellant Children's Home concedes that the district court has continuing jurisdiction in the divorce action to consider matters relating to the custody of the minor children of the parties to such action. The Home contends however that the order of the probate court entrusting the care of the children to a suitable aid society based upon the alleged neglect of the parents, extinguished the district court's jurisdiction over the children, derived from retention of its jurisdiction acquired in the divorce action, and that such order deprives both parents to the rights of custody.

The original jurisdiction of the district court in all cases at law and in equity, stemming from Idaho Const. Art. V, § 20, cannot be, nor was it intended to be, abridged by legislation in the area of neglected, dependent or delinquent children. When the contest is between the parents or a parent and a third person as to who should have the custody of a minor, the court exercising general civil jurisdiction is the proper and exclusive tribunal to decide the issue. But when a child is neglected, dependent or delinquent then the state, through the juvenile court, acting in the interest of the welfare of the child, has the paramount right to determine the issue of custody. Such a proceeding is quasi criminal in nature, State ex rel. Graham v. Graham, 173 La. 469, 137 So. 855 (1931). People ex rel. Heyer v. Juvenile Court, 75 Colo. 493, 226 P. 866, 867 (1924), points out that "the minor may be seized from the custody of its parent to whom the court has confided it and tried for dependency or delinquency."

We recognize that the jurisdiction exercised by a divorce court in awarding the custody of a child is fundamentally different than that exercised by a juvenile court. In re Hosford, 107 Kan. 115, 190 P. 765,

766, 11 A.L.R. 142, 144 (1920), recognized such a distinction when it said: "The juvenile court, however, stands upon a very different footing [than the district court]. It is specifically given jurisdiction 'of all cases concerning dependent, neglected, and delinquent children.' * * * The conditions under which it may take control of a child and the manner in which it may exercise it are quite different from those existing in the case of any other tribunal." The conclusion reached by the Kansas Court is in agreement with the majority view. See cases collected at In re Hosford, 107 Kan. 115, 190 P. 765, 11 A.L.R. at 147 (1920); Ross v. Ross, 89 Colo. 536, 5 P.2d 246, 78 A.L.R. 317 (1931). In People ex rel. Houghland v. Leonard, 415 Ill. 135, 112 N.E.2d 697, at 701 (1953), the Illinois Court said: "The divorce court is primarily concerned with determining the fitness of the parents for the purpose of awarding the custody of the minor child, with a view to serving the best interests of the child." It further observed that in a juvenile court proceeding concerning a dependent, neglected and delinquent child, "The issue is not which parent should have custody, but whether the interest of the State requires that neither parent have custody." (112 N.E.2d at 701.)

The constitutions of other states in the area under consideration generally provide that district courts or superior courts shall have jurisdiction as may be provided by law; and provide that juvenile courts shall have jurisdiction of dependent, neglected and delinquent children. Jurisdiction of juvenile courts as so constitutionally provided, has been held in some instances to preempt the jurisdiction of divorce courts over the children of a dissolved marriage.

Examination of Idaho's Constitution discloses a marked difference in the jurisdiction of the district court in that "The district court shall have original jurisdiction in all cases, both at law and in equity." Idaho Const. Art. V, § 20; and the probate court has original jurisdiction in the matter of "appointment of guardians." Idaho Const. Art. V, § 21; 1962 amendment of Art. V, § 2.

The decisions to which appellant refers must be analyzed in the light of the provisions of the constitutions of the respective states in which the justiciable controversies involved issues similar to those in the case at bar.

Appellant Children's Home relies upon In re Hosford, 107 Kan. 115, 190 P. 765, 11 A.L.R. 142 (1920), which held that when the juvenile court had entrusted the care of a dependent and neglected child to the custody of a children's aid society, the district court which had previously granted a divorce to the parents of the child, lost jurisdiction over the custody of the child. The superior jurisdiction of the juvenile

court in all instances involving custody of children stemmed from the Kansas constitution, inasmuch as the district court had only such jurisdiction "as may be provided by law." Kan.Const. Art. III, § 6 (not discussed in the Hosford case). Board of County Commissioners of Miami County v. Collins, 47 Kan. 417, 28 P. 175 (1891), ruled that the probate court may receive judicial powers other than those granted by Kan. Const., Art. III, § 8, i. e., jurisdiction in the matter of estates. Egnatic v. Wollard, 156 Kan. 843, 137 P.2d 188 (1943), further ruled that the legislature, in enacting a probate code, possessed the power to confer as well as to take away jurisdiction from both district and probate courts, citing Kan.Const., Art. III, §§ 6 and 8. Trent v. Bellamy, 164 Kan. 438, 190 P.2d 400 (1948), also cited by appellant, in effect follows the holding of the Hosford case.

Louisiana cases cited by appellant are to be distinguished from the case at bar in view of Louisiana's Constitution. When State v. McCloskey, 136 La. 739, 67 So. 813 (1915), was decided the Juvenile court was held to have exclusive jurisdiction to determine whether a child was within the class over which it had been given jurisdiction, as against the civil district court which had jurisdiction to award the custody of the child as an incident to a divorce

suit. Brana v. Brana, 139 La. 305, 306, 71 So. 519 (1916), is to the same effect. See also State ex rel. Birch v. Baker, 147 La. 319, 84 So. 796 (1920); Buffington v. Goldman, 152 La. 647, 94 So. 147, Annot. 78 A. L.R. 317 at 319 (1922); In re Owen, 170 La. 255, 127 So. 619 (1930); State ex rel. Graham v. Graham, 173 La. 469, 137 So. 855 (1931); State ex rel. Herbert v. Renaud, 157 La. 776, 103 So. 101 (1925).

In People ex rel. Heyer v. Juvenile Court, 75 Colo. 493, 226 P. 866 (1924), also cited by appellant, the Colorado Supreme Court held that the juvenile court cannot be deprived of exclusive jurisdiction over dependent children by proceedings in the district court. As authority for such position the Court referred to Colo.Const., Art. VI, § 1 which clothed the juvenile court with exclusive jurisdiction in matters involving minors. The Court also referred to Colo.Laws 1923, ch. 78, § 1, whereby the legislature provided that juvenile courts shall have exclusive jurisdiction in cases concerning neglected, dependent or delinquent children and their custody and disposition; and further provided that "the disposition of the custody of children in any divorce case shall not be held to interfere with the jurisdiction of the juvenile court in cases concerning the dependency of such children under the laws of this state concerning dependent children." Ross v. Ross, 89 Colo. 536, 5 P.2d 246, 78 A.L.R. 313 (1931), is to the same effect.

Cases from other jurisdictions which appear to support appellant's contentions, likewise are to be distinguished from the case at bar because of constitutional provisions which differ from the hereinbefore referred to provisions of Idaho's Constitution. Cases so distinguishable are: Children's Home of Marion County v. Fetter, 90 Ohio St. 110, 106 N.E. 761 (1914); Spade v. State, 44 Ind.App. 529, 89 N.E. 604 (1909); Ex parte Pruitt, 207 Ala. 261, 92 So. 426 (1922); In re Holt, 121 Cal.App.2d 276, 263 P.2d 50 (1953); People on Behalf of Farley, 162 Cal.App.2d 474, 328 P.2d 230 (1958).

■■ The probate court is a court *of record* with original jurisdiction in the matter of appointment of guardians, Idaho Const. Art. V, § 21, continued in effect until otherwise provided by law, Idaho Const., Art. V, § 2, 1962 amendment. The probate court record in the matter of the Spaulding children, as hereinbefore shown, is devoid of any oral or documentary evidence, or otherwise, sufficient to support the finding that the children were neglected, dependent or abandoned by reason of any dereliction on the part of respondent. In other words, the lack of jurisdiction of the probate court to enter the order dated June 6, 1963, while not appearing on the face of the order, nevertheless affirmatively appears from the official record of the probate court proceeding, or lack thereof, in the matter of the children.

■■■ The probate court is not a court of "law and equity" within the meaning of the Constitution, Short v. Thompson, 56 Idaho 361, 55 P.2d 163 (1936); hence a probate court acting in the matter of appointment of guardians must be regarded and treated as a court of limited and special jurisdiction, and everything necessary to give jurisdiction must appear in the record; while everything will be presumed to be without jurisdiction which does not appear by the record to be within it. Wright v. Atwood, 33 Idaho 455, 461, 195 P. 625, 627 (1921).

Herein respondent attacks the order of the probate court. His attack, however, is not by direct attack inasmuch as he is not a party to the probate court proceeding in the matter of the children. Rather, respondent impeaches the order by the habeas corpus proceeding, which he did not institute for the purpose of annulling, correcting or modifying such order, or of enjoining the execution, Wright v. Atwood, supra; but to show that insofar as such order may be intended to adjudicate respondent's rights, respondent is not bound by the order, and that the district court has superior original jurisdiction in the premises.

■■■ Such an order may be collaterally attacked by an appropriate proceeding

within a reasonable time. Prather v. Loyd, 86 Idaho 45, 382 P.2d 910 (1963). Hence insofar as the probate court order may be construed as having adjudicated the fitness of respondent to have the custody of his children and that it ousted the district court of jurisdiction in such area, as appellant contends, it was and is void as to respondent. As aptly stated in Wright v. Atwood, supra, 33 Idaho at 462, 195 P. at 627, "* * * a judgment by a tribunal without authority, or which exceeds or lies beyond its authority, is necessarily void, and may be shown to be so in collateral proceedings, even though it be a court of general jurisdiction, because no authority derived from the law can transcend the source from whence it came; * * *."

The right of respondent to direct a collateral attack upon the order of the probate court by reason of his not being a party to the probate court proceeding, is recognized by this Court.

In Smith v. Smith, 67 Idaho 349, 180 P.2d 853 (1947), the Washington County district court, during September 1941, granted a default divorce to a mother and awarded her the custody of a minor child, subject to the father's reasonable visitation rights. During October 1945, the father petitioned for modification of the divorce decree, seeking custody of the child, alleging that the mother had remarried and had abandoned the child to its grandparents; also alleging that on January 13, 1945, the mother and her second husband had obtained an order of adoption of the child issued by the Washington County probate court. The district court declared the probate adoption proceedings to be void, and granted custody of the child to the father. On an appeal, this Court in answer to appellant's assertion that the order of the probate court was not subject to collateral attack, quoted with approval from Beatty v. Davenport, (1907), 45 Wash. 555, 88 P. 1109, 1111 (1907), in part as follows:

"* * * It is also true that the decree of adoption recited that the father had the custody, care, and control of the infant children, but this recital was not binding upon her, because she was not a party and had no opportunity to be heard upon it. The decree of adoption was binding only upon the parties before the court and their privies. It was not binding upon respondent, because she was neither a party nor a privy to it. The court therefore had no jurisdiction to determine her rights."

The Washington Supreme Court, in holding that the proceeding for adoption was subject to collateral attack by habeas corpus proceeding for possession of the children, further stated:

"The rule is that a judgment can always be attacked collaterally by one who was not a party or privy to it.

Black on Judgments (2d Ed.) §§ 278, 534. * * * The basis of the rule that a judgment regular upon its face cannot be attacked collaterally is that there has been an adjudication of the question between the parties. * * *

"In the case of Schiltz v. Roenitz, supra [86 Wis. 31, 56 N.W. 194, 21 L.R.A. 483 (1893)], the court, speaking on this question said: '* * * Certainly, nothing is gained by saying that the proceeding is one quasi in rem * * *. The judgments and decisions of a judicial tribunal are conclusive, and secure against collateral attack, only when the tribunal rendering them had jurisdiction of the subject-matter and of the parties to be affected by them. * * *' "

Mill v. Brown, 31 Utah 473, 88 P. 609 (1907), was certiorari to review the judgment of the juvenile court committing a juvenile to Utah's industrial school. The juvenile court was clothed with jurisdiction to provide for the custody of delinquent children. In reversing the judgment, the Supreme Court of Utah observed:

"* * * We desire to observe also that while the parent or guardian is not legally a necessary party to the proceedings, and should not, and cannot be bound by any judgment rendered in the juvenile court respecting his rights to the custody and control of the child, yet, in view that he is affected, it perhaps were better that a formal notice of the hearing be served on him * * * to the end that all the facts may be elicited by the investigation." 88 P. at 614.

The permissive rather than mandatory terminology of I.C. § 32–705 indicates a recognition of probate or juvenile court jurisdiction in the area of guardianship of neglected, abandoned and delinquent children, originally stemming from Idaho Const. Art. V, § 21, even though the children be of a marriage dissolved by divorce. However, the superior continuing jurisdiction of the district court over the custody of the children may be invoked by a parent entitled to the custody of the children for the purpose of showing that the children are not in fact neglected, abandoned or delinquent. The power of the state as *parens patriae* to take the place of the parent and to assume parental authority over a child by reason of its misfortune to the end that the child's best interests and welfare be served, is recognized in Ex parte Sharp, 15 Idaho 120, 96 P. 563, 18 L.R.A.,N.S., 886 (1908). That case was a proceeding similar in principle to the case at bar, instituted under "[a]n act to provide for the care of delinquent children", Idaho Sess.Laws 1905, p. 106. In that case the Court observed:

"* * * the order or decree of the probate court in such matters is one

*in personam* and acts upon the child alone. It is the paternal and benevolent hand of the state reaching out as *parens patriae* to take hold of the child * * * for the purposes of fostering, protecting, and educating the child, and this power and authority and duty is intended to be exercised only in cases where the child is without the care and protection of a parent or guardian or where the parent or guardian has become unable or neglects or refuses to control, manage, care for, educate, and protect the child. In other words, this power and duty and obligation is exercised on the part of the state only in cases where the child is destitute of that care and protection to which it is entitled." 15 Idaho at 130, 96 P. at 565. Concerning procedural aspects this Court said:

"* * * If the parent objects to the child's being taken care of by the state in the manner provided for by the act, he may appear and present his objections. If, on the other hand, he is not made a party to the hearing and proceeding, under all the recognized rules of legal procedure, he is clearly not bound by the judgment, and none of his rights are precluded. If he desires to contest the state's right to take the steps it has taken, he has his remedy in the courts to contest that right, and adjudicate his own rights as fully and completely as if no order had been made with reference to the child. If his child were taken without any process whatever, * * * he would have his remedy in the courts to regain its possession; and so he has if his child is improperly taken from him under the provisions of this act. The order and judgment committing the child to the Industrial Training School does not run against the parent, and does not determine any of his rights in that respect. * * * The order or decree should adjudge both that the child is a delinquent, * * * and that he is either without the care and protection of a parent or guardian or that the parent or guardian is neglecting and failing to discharge the duties he owes to the child. Mill v. Brown, supra [31 Utah 473, 88 P. 609, 120 Am.St.Rep. 935 (1907)]; Farnham v. Pierce, supra [141 Mass. 203, 6 N.E. 830, 55 Am. Rep. 452 (1886)]; Milwaukee Industrial School v. [Milwaukee County] Supervisors, etc., supra [40 Wis. 328, 22 Am.Rep. 702 (1876)]; In re Kelley, supra [152 Mass. 432, 25 N.E. 615 (1890)]. Such finding and decree, however, simply establish the status and conditions of the child and the existing necessity for granting it the protection, nurture and aid of the state, and in no respect does it determine or adjudicate any right of the parent or guardian. See cases last above cited."

In re Sharp, 15 Idaho at 130, 131–132, 96 P. at 565–566.

The Sharp case was a proceeding in habeas corpus "based solely upon constitutional grounds". The concluding remarks of the Court contain the following:

"* * * it is well enough to observe that the petitioner does not make any charge in this case that his daughter was not in fact a delinquent child within the meaning and purview of the legislative act, nor does he make any contention that he has been improperly deprived of her custody and control, if the act is valid. The only contentions urged here have been that the legislative act itself is unconstitutional." 15 Idaho at 137, 96 P. at 568.

As regards the right of a parent to the custody or guardianship of a child, I.C. § 32–1007 reads:

"The father and mother of a legitimate unmarried minor child are equally entitled to its custody, services. and earnings. If either the father or mother be dead or be unable or refuse to take the custody or has abandoned his or her family, the other is entitled to the child's custody, services and earnings."

And I.C. § 15–1805, reads:

"Either the father or mother of a minor, being themselves respectively competent to transact their own busi-. ness, and not otherwise unsuitable, must be entitled to the guardianship of the minor."

■ If the parent is competent to transact his or her own business, and is not otherwise unsuitable, the custody of the child is not to be given to another, even though such other may be a more suitable person. In re Crocheron's Estate, 16 Idaho 441, 101 P. 741, 33 L.R.A.,N.S., 868 (1909); Jain v. Priest, 30 Idaho 273, 164 P. 364 (1917); McChesney v. Geiger, 35 Idaho 69, 204 P. 658 (1922); Schiller v. Douglas, 48 Idaho 803, 285 P. 1021 (1930).

In In re Martin, 29 Idaho 716, 723, 161 P. 573, 575 (1916), wherein a writ of habeas corpus issued in order to inquire into the fitness of a parent to have the custody of a child, this Court said:

"The matter of primary importance in a proceeding of this character [habeas corpus] is the future welfare and best interests of the minor child, which, under the facts and circumstances of this case, deserves careful consideration and diligent inquiry.

"Parents should not. be permanently deprived of the custody of their children and the right to act as their legal guardians, even when under certain circumstances the custody of the children must be temporarily surrendered, except in strict accordance with the statutes and under circumstances which

fully warrant such drastic action. [Citing R.C., sec. 5774, now I.C. § 15–1805.]

\* \* \* \* \* \*

"While either of the parents are competent, and not unsuitable, they are absolutely entitled to the guardianship of their minor children \* \* \*."

█ In aid of the exercise of its jurisdiction the district court properly adopted a writ of habeas corpus as a suitable means for inquiring into and determining the right of custody entitlement of respondent's minor children. Andrino v. Yates, 12 Idaho 618, 87 P. 787 (1906); In re Martin, supra; Allen v. Williams, 31 Idaho 309, 171 P. 493 (1918); Application of Altmiller, 76 Idaho 521, 285 P.2d 1054 (1955); Application of Paul, 78 Idaho 370, 304 P.2d 641 (1956).

█ The record before this Court, taken before the trial court, shows that respondent is ready, willing and able to care for his children. At no time had he in fact neglected or abandoned the children or refused their care, as shown by his repeated efforts to see the children and his desire to take them out of the Children's Home, to his own home; also that for ten consecutive seasons, prior to the time of the trial herein, he had been employed in the sugar industry in Montana.

The district court did not adjudicate the issue of respondent's fitness to have the custody of his children, in the original default divorce action, but did so in respondent's favor in the modification proceeding. This, the court did by virtue of its continuing jurisdiction over the children to the end that their best interest and welfare be served under its original equity jurisdiction stemming from the Constitution.

The order of the district court is affirmed.

Costs to respondent.

McQUADE, C. J., and McFADDEN, TAYLOR and KNUDSON, JJ., concur.