(November 17, 1906.)

# JULIA F. ANDRINO, Plaintiff, v. SARAH E. YATES, Defendant.

### [87 Pac. 787.]

HABEAS CORPUS—CUSTODY OF MINOR CHILD—RIGHT OF PARENT—RELINQUISHMENT OF—WELFARE OF CHILD—EXAMINATION OF CHILD.

1. The right to the guardianship of a minor cannot be tried upon *habeas corpus*.

2. This proceeding was not for the purpose of setting the child free, but to determine whether the plaintiff was entitled to its custody.

3. The jurisdiction of the question of the custody of a child under a writ of *habeas corpus* is of an equitable nature, and courts have large discretion in the matter.

4. Under the provisions of section 5774, Revised Statutes, the parent is entitled to the guardianship of his minor child when he is competent to transact his own business and not otherwise unsuitable as guardian.

5. The legal right to the custody of a minor may be abandoned or forfeited by the acts or conduct of the parent, and in such case he is equitably estopped from asserting such legal right.

6. Where the legal right of the parent is not clear, the best interest of the child will govern the decision of the court.

7. When it appears that a child has resided with its aunt from the time it was about two and one-half years old until it is nearly twelve years of age without having seen its mother, and that conditions are such, and made so by the acts of the parent, that the care and custody of the child cannot be changed without endangering the happiness and welfare of the child, the parent has become, in the language of section 5774, Revised Statutes, "unsuitable" for possession of the child.

8. In such cases the welfare of the child is the main consideration for the court.

9. In cases of doubt and difficulty the court may examine the minor, when it is of sufficient age and discretion, as to its wishes and desires in the matter; not that its wishes must control in the matter, but that the court might more wisely arrive at a just conclusion in the case.

(Syllabus by the court.)

ORIGINAL application for a writ of *habeas corpus* to determine the right to the care and custody of minor child. Application denied. *Writ quashed and child remanded.*

Fogg, Nugent & Cassady, for Petitioner.

That the parent, if living and not shown to be incompetent, is absolutely entitled to the guardianship of the child is firmly settled by the decisions of the supreme court of California upon statutes practically identical with our own.

It is the common law, as stated by all text-writers on the subject, and settled by the decisions of courts, with substantial unanimity, that the father or mother, if living and not affirmatively shown to be incompetent, are absolutely entitled to the custody of their minor child, as against an official guardian. The statutes of Idaho, however, expressly give that right to the parent. (Rev. Stats., secs. 5774, 5775.) These sections were taken from the Code of Civil Procedure of California, and were construed by the courts of that state before their adoption in this state. (*Lord v. Hough,* 37 Cal. 668.)

The amendment of section 5774, page 302, Session Laws of 1899, gave the mother the same right as the father to the custody of the child, and removed the restriction depriving the mother of the right by remarriage. The claim of the father as natural guardian of the custody of his child is superior to that of an official guardian. (*Ex parte Davidge,* 72 S. C. 16, 51 S. E. 269.)

The appointment of a legal guardian does not deprive a father of his right to the custody of his child. (*Gilmore v. Kitson,* 165 Ind. 402, 74 N. E. 1083.)

The presumption of the mother being a competent and suitable person will prevail in absence of strong and convincing evidence showing beyond a doubt that she is unsuitable or incompetent. (*Miller v. Wallace,* 76 Ga. 479, 2 Am. St. Rep. 48.)

And even in a case where the father gave his son to a man of good character and ample means to keep him during minority, the mother, after the death of the father, may maintain

*habeas corpus* for the child, and this, although she was poor and dependent, and he preferred to remain with the defendant. (21 Cyc. 24; *Moore v. Christian,* 56 Miss. 408, 31 Am. Rep. 375.)

Lycurgus Vineyard and E. M. Griffiths, for Defendant.

SULLIVAN, J.—This is an application for a writ of *habeas corpus* by the mother to obtain possession of her now about twelve years of age daughter. The facts of the case are substantially as follows: It appears that the petitioner intermarried with one Thomas Stewart in the state of Oregon in the year 1893 or 1894; that after said marriage they lived near Jacksonville in said state; that on the twenty-fifth day of February, 1895, the child Phoebe M. Stewart, was born; that the married life of the petitioner and her said husband was not congenial, and when the child was about eight months old the petitioner left her husband, taking the child with her, and left it with an aged couple residing at Medford, Jackson county, state of Oregon. The child remained there until about the month of November, 1897, about two years, when it was delivered by its father to the daughter of Mrs. Yates, to be delivered to the defendant in this proceeding, who was the sister of the said Stewart, where the child remained until the present time. The father died about a year after the child was placed in the hands of Mrs. Yates. It appears from the record that the petitioner, after leaving the child with the aged couple referred to, went to California and remained at different places in that state for some time; she thereafter went to Nevada and was there married to a butcher. It also appears that her married life with the butcher was not congenial and she left him and returned to California. Afterward she left California and went to Tombstone, Arizona, where about a year prior to this time she married her present husband, Barney Andrino. It appears that Andrino is engaged in the saloon business and has a home in said town and is worth about $7,000; that he has a

pleasant home in that place. It also appears that from the time the child was left with the aged couple in Oregon, the petitioner wrote to them very seldom and sent them about $10 to pay for the care, clothing and nurture of the child; that the child was not quite three years old when it was placed in the care of Mrs. Yates by its father; that Mrs. Yates has taken care of it from that time to this; that during those eight or nine years six or seven letters were received from the petitioner by the daughter of Mrs. Yates, in which she inquired about the child and said that she wanted to keep track of it, but did not want to take it from Mrs. Yates. During that time the petitioner did not send any money, clothing or presents of any kind to the child. It further appears that the petitioner has no means of her own with which to pay for the care and schooling of the child. It also appears that her husband Andrino would be pleased to have his wife take the child and that he would furnish the means for its support, clothing and schooling. The child is now nearly twelve years of age, has become very much attached to its aunt, Mrs. Yates; that it does not wish to go with its mother, but desires to remain with its aunt. It also appears from the record that the probate court of Idaho county issued letters of guardianship, whereby Mrs. Yates was appointed guardian of said child. However, the application for letters of guardianship was not made until about the month of July, 1906, and after Mrs. Yates was convinced that the petitioner was going to make an effort to get possession of the child.

Some technical questions have been raised in this case with regard to collateral attacks on orders or judgments of the probate court in guardianship matters, but, as we view it, it is not necessary for us to pass upon those questions. It is contended by counsel for plaintiff under the provisions of section 5774, Revised Statutes of Idaho of 1887, as amended by Session Laws of 1899, page 302, that the mother of a minor child being competent and not unsuitable, is absolutely entitled to the guardianship of the minor. That, we think, is the correct construction of the provisions of that section,

but we think it is well settled that the right to the guardianship of an infant cannot be tried upon *habeas corpus.* (Hurd on Habeas Corpus, p. 457.)

This is not the case of an adult appealing to the aid of *habeas corpus* to obtain his freedom from illegal restraint, but the writ in this case was granted to inquire whether the plaintiff is entitled to the custody of said minor child. The proceeding is not for the purpose of setting the child free, but to determine whether the petitioner is entitled to its custody, and the correct view or rule is that the jurisdiction of the question of the custody of a child under a writ of *habeas corpus* is of an equitable nature, and courts are given large discretion in the matter.

As stated in Hurd on Habeas Corpus, page 528: "The welfare of the infant is the polar star by which the discretion of the court is to be guided." Of course the legal rights of the parent must be respected, and the law contemplates that those rights may have been abandoned, surrendered, transferred or forfeited, for it is declared in said section 5774 as amended that either the father or the mother of the minor child, being themselves respectively competent to transact their own business and not otherwise unsuitable, must be entitled to the guardianship of the minor. Under the facts presented by the proofs and record, it is clear to us that the plaintiff surrendered her legal rights as mother to the care and custody of said minor when it was an infant about eight months old, and did not see it nor give its care and custody any attention for a period of about eleven years, except an occasional letter making inquiry in regard to the whereabouts of the child. It is true she sent about ten dollars to the old folks with whom she left the child. But during the eight or nine years that the defendant has had charge of the child the record and evidence fails to show that the petitioner has exhibited any motherly feeling or affection for the child in any way or manner. It is true she wrote perhaps once a year for the purpose of keeping track of the child, but she never sent her so much as a doll

or any present whatever during those eight or nine years. Her original legal right as mother was abandoned, forfeited or surrendered, and cannot now be reasserted to the manifest injury of the child. Her strict legal custody has ceased to be a rightful custody, and she is equitably estopped from asserting it as a legal right. It is a legal principle that when the right of the parent is not clear, the best interest of the child will govern the court. That being true under the facts as they appear from the record, the welfare of the child is the main object to be attained. The child is a bright girl, nearly twelve years of age, and never has known any mother except her aunt, the defendant. She has grown up in the ways and customs of her aunt's household. Her friends are there and her affections are there centered. She is being well cared for, and while she is not as far advanced in her studies as many children of her age, her education is not being neglected, as she has for the last two years attended the Grangeville village schools.

On the other hand the conduct of the mother furnishes reason for supposing that she had surrendered the care and custody of the child to the defendant for more than eight years, during most of the conscious lifetime of the child, with the understanding that she would not reclaim it. She made no offer to contribute to its support. By her own acts of omission she has permitted, allowed and encouraged the child to fix her affections on her aunt and cousins, among whom it has resided since its infancy, and it is clear to us that the condition of things cannot now be changed without endangering the happiness and welfare of the child. The welfare of the child is the main consideration for the court under the facts of this case, and nothing that would throw any light upon the matter should be overlooked by the court. As the minor is now a well-developed, bright girl nearly twelve years of age, the court questioned her in regard to her wishes and desires in the matter. Not that the child's wishes should control in the matter, but that the court might more wisely exercise its discretion and might learn its feel-

ings, its attachments, its reasonable preferences, its probable welfare and contentment. The practice of consulting the infant's wish is well established in such cases. (Hurd on Habeas Corpus, p. 527.) In this case the court examined the child privately and alone and she was also sworn and testified in open court.

It was stated by counsel for the plaintiff on the oral argument of this case that the plaintiff desired to give the child better educational advantages than she was receiving in the Grangeville public schools, and that she would be willing to pay the expenses of placing and maintaining the child in some good school. That is a matter to be presented to the probate court of Idaho county, and in case the plaintiff desires to have the child placed in some good school in this state and will pay the expenses of the child therein, the probate court must see that it is done. It is not intended to deprive the mother from seeing and visiting the child at all proper times and places.

The application of the petitioner is denied and the child remanded to the care and custody of the defendant, Mrs. Sarah E. Yates, until the further order of the court. Costs are awarded to the defendant.

Stockslager, C. J., and Ailshie, J., concur.