285 P.2d 1064

In the Matter of the Application of Carl F. ALTMILLER for a Writ of Habeas Corpus.

Carl F. ALTMILLER, Respondent,

v.

Alma FORSMAN, Appellant.

No. 8123.

Supreme Court of Idaho.

June 28, 1955.

Warren F. Gardner, Orofino, Cox, Ware & Stellmon, Lewiston, for appellant.

Swayne & McNichols, Orofino, for respondent.

ANDERSON, Justice.

This is a habeas corpus proceeding brought by respondent Carl Altmiller, the father, against appellant, Alma Forsman, the grandmother, to secure the custody of Nancy Carol Altmiller, a minor, now eleven years of age.

Respondent Carl Altmiller married Alta Forsman, daughter of appellant, Alma Forsman, in 1940, she having been married three times previously. Nancy was born March 3, 1944. Her parents separated in August, 1948, after considerable trouble.

A divorce was granted the wife on December 30, 1948, on the ground of extreme cruelty, and she was awarded the care and custody of Nancy, together with $75 per month as support money for her. She also was awarded all of the community property, which was worth between $5,000 and $13,000. The exact amount cannot be determined from the record, as the evidence is conflicting.

Alta conveyed part of the real property awarded her by the divorce decree to her mother, appellant herein, which appellant sold for the sum of $5,000, and this money was used by all three for living expenses, as well as doctor and hospital bills for Alta, which were large. Part of the time public relief was received for the child's support.

After the separation Nancy lived with her mother and grandmother in the home of the grandmother, appellant herein, from August, 1948, until the death of Alta on June 30, 1953, and thereafter continued to live at her grandmother's home. Nancy's mother was in poor health for several years prior to her death, and consequently much of the care of Nancy fell upon the appellant.

Respondent visited Nancy only on one occasion during the time from August, 1948, until the commencement of this action. He did not send any Christmas card, birthday card or any communication directed to Nancy.

About July 12, 1953, respondent learned of his former wife's death, and thereupon toward the last of that month he sent $50 to his daughter, Nancy. He made no other payments nor had he written any letters to Nancy or his former wife, or to appellant, except one to Alta in care of a Mrs. Nelson, dated October 14, 1952, in which he did not disclose his whereabouts. He in-

quired about his daughter, but sent no money.

His excuse for not complying with the support provisions of the decree was that he was sick and barely able to support himself during the time from 1948 to the death of his wife in the summer of 1953; that he was without means or funds; that he had paid $400 for his wife's hospitalization during 1948 and that he was in the hospital himself for surgery for hemorrhoids three days shortly after the divorce decree was entered, and that his earnings for the years 1949, 1950 and 1951 were not more than $200 per year nor more than $300 in 1952; that during part of this time he lived on the charity of an aunt; that in the summer of 1953, he finally began to improve in health; that he never intended to abandon the child at any time, but had arranged with a friend, Emil Keck, to keep him advised as to the welfare of Nancy. Keck testified that he frequently corresponded with respondent from 1949 to 1952 relative to the child.

Appellant concedes the moral fitness of respondent, and the trial court made a finding to such effect, and also found that he had not abandoned his minor child, and that his failure to make the payments of $75 per month as ordered in the divorce decree was due to illness and lack of funds. The custody of Nancy was awarded to respondent, and hence this appeal.

Appellant makes 10 assignments of error, five of which pertain to affirmative findings favorable to respondent, and the other five allege error in failure to find favorable to the appellant in certain respects. Actually, what appellant's assignments of error amount to is that the trial court committed error in awarding custody of a minor child to respondent, the father, rather than to appellant, the grandmother.

Appellant has conceded, as she must, that upon the death of Alta Altmiller, the mother of Nancy, the respondent, the father, would be prima facie entitled to the custody of Nancy under Idaho law, Sec. 32–1007, I.C. Appellant urges, however, that respondent abandoned Nancy during the lifetime of his former wife, and therefore is not entitled to the child's custody.

This court recently stated, in the case of Moss v. Vest, 74 Idaho 328, 262 P.2d 116, 119:

"There can be no abandonment without a specific intent to sever all correlative rights and duties incident to the relationship of parent and child."

Non-support and abandonment are not synonymous. Non-support, in and of itself, does not constitute abandonment. Smith v. Smith, 67 Idaho 349, 180 P.2d 853; In re Kelly, 25 Cal.App. 651, 145 P. 156.

The trial court was correct in its finding that the evidence failed to show legal abandonment by the father of the minor child.

Sec. 15–1805, I.C. provides that:

"Either the father or mother of a minor, being themselves respectively

competent to transact their own business, and not otherwise unsuitable, must be entitled to the guardianship of the minor."

In the case of Brown v. Brown, 66 Idaho 625, 165 P.2d 886, 888, this court stated:

"Before the court is justified in taking the children from the parents, and awarding them to a third person, not only must it find that the parents are unfit *or unable to properly care for the children,* but the fitness of the person to whom it is proposed to grant their custody and care must be the subject of inquiry in the action * * *." (Emphasis added.)

The evidence discloses that respondent did not take the interest in his child that a normal father would have, nor assume any responsibility for her. The appellant has had the child in her home since the child's parents separated in August, 1948, and the evidence discloses that there is a devotion between her and the child, while the father is a stranger to the child, having seen her only once since the separation. Although it is undisputed that the respondent is morally a fit and proper person to have the care, custody and control of his minor daughter, Nancy, it is disputed whether or not he has a suitable and proper place to care for and educate her. The evidence discloses that he has not remarried, and he proposes to take Nancy to the State of Washington to live' with him in a farm house on a 12,000-acre farm, where he has employment doing farm work. He testified that his employer's wife, who is 42 years of age and has never seen Nancy, will assist in caring for her. She and her husband live approximately one-fourth of a mile from the house that respondent proposes to occupy with his daughter. The evidence shows that respondent believes that his widowed aunt, 62 years of age, who lives in Oroville, Washington, three or four miles from where respondent proposes to live, would also assist in caring for Nancy. There would be no woman living in respondent's home.

Relative to the child's being properly cared for by her grandmother, the respondent, on cross-examination, testified:

"Q. Do you know whether she is properly cared for? A. I think she is, from what I have seen.

"Q. You think she is being properly taken care of? A. I think Mrs. Forsman is very careful to take good care of Nancy up until a certain age when they should be reminded of their mistakes and they go on making mistakes and somebody else is blamed for their mistakes.

"Q. You are satisfied you could say she is being properly cared for? A. As far as I can see, in light of her environment.

"Q. As far as the actual care, you are satisfied with that care? A. Yes."

Several witnesses testified as to appellant's fitness and the suitability of her home for caring for Nancy. In cases of

this nature, three rights of interest are to be considered: First, that of the parents; second, that of the person who has for years discharged all the obligations of the parents; third, and chiefly, that of the child. Russell v. Russell, 208 Okl. 41, 253 P.2d 136, 138. Each case of this nature; where the future welfare of a minor child is involved, must stand or fall upon the peculiar or particular facts and circumstances of the case before the court. There can be no binding—and very little helpful —precedent found in the decisions of the courts on this subject, because of this fact. Piotrowski v. State, 179 Md. 377, 18 A.2d 199, 200, 201.

In Andrino v. Yates, 12 Idaho 618, 622, 87 P. 787, 789, this court stated:

"This is not the case of an adult appealing to the aid of habeas corpus to obtain his freedom from illegal restraint, but the writ in this case was granted to inquire whether the plaintiff is entitled to the custody of said minor child. The proceeding is not for the purpose of setting the child free, but to determine whether the petitioner is entitled to its custody, and the correct view or rule is that the jurisdiction of the question of the custody of a child under a writ of habeas corpus is of an equitable nature, and courts are given large discretion in the matter. As stated in Hurd on Habeas Corpus, p. 528: 'The welfare of the infant is the polar star by which the discretion of the court is to be guided.' "

Custody of a minor child should be awarded to a parent unless it be affirmatively shown that he is unfit to have such care and custody, *or that on account of circumstances surrounding him he is unable to provide proper training and education.* Ordinarily, poverty of a parent is not sufficient reason for depriving him of the custody of his child. Whether the proceeding be habeas corpus or a divorce proceeding involving the custody of a minor child, *the same principles should govern the action of the courts in awarding custody.* Piatt v. Piatt, 32 Idaho 407, 184 P. 470, 472.

This court, in the case of Schiller v. Douglas, 48 Idaho 803, 285 P. 1021, 1022–1023, which was a habeas corpus action, stated:

"Where abandonment or forfeiture has not been proven, the unsuitability of the parent must appear."

In Maudlin v. Maudlin, 68 Idaho 64, 188 P.2d 323, 327, the court said:

"It is likewise well settled, in this jurisdiction, that the welfare and best interest of a minor is of paramount consideration. Fish v. Fish, [67 Idaho 78] 170 P.2d 802; Roosma v. Moots, 62 Idaho 450, 112 P.2d 1000, 1003.

"In the case of Roosma v. Moots, supra, it is said: 'It is well-settled in this state that "in cases of this character" the welfare and best interest of a minor child "is the paramount consideration" and that the "child's welfare as a normal human being and future citizen is the polar star by which the

court must be guided in awarding its custody." Kirkpatrick v. Kirkpatrick, 52 Idaho 27, 10 P.2d 1057; Krieger v. Krieger, 59 Idaho 301, 81 P.2d 1081, 1083; Sauvageau v. Sauvageau, 59 Idaho 190, 81 P.2d 731; Piatt v. Piatt, supra (32 Idaho 407, 184 P. 470); Keyes v. Keyes, 51 Idaho 670, 9 P.2d 804, 806; Cornelison v. Cornelison, 53 Idaho 266, 23 P.2d 252.' * * *"

(Citing from Ruthruff v. Ruthruff, 52 Idaho 330, 14 P.2d 958) " 'The best interest of the child in such proceedings are of paramount importance, though to modify an award of a child of tender years to the mother, it must appear that conditions have changed and that the mother is unfit to longer have the custody of the child. Kirkpatrick v. Kirkpatrick, supra. This does not necessarily mean morally unfit, as there are many elements of unfitness which may be considered.' "

See also Finn v. Rees, 65 Idaho 181, 141 P. 2d 976; Richardson v. Richardson, 72 Idaho 19, 22, 236 P.2d 718; Jeppson v. Jeppson, 75 Idaho 219, 223, 270 P.2d 437.

■ While it is true that the legal custody of the child was in her mother until her death June 30, 1953, much of the actual care and custody was in the grandmother as they all resided in appellant's home from August, 1948, to the death of the mother, and the child was still residing there when this action was commenced September 2, 1953. The court must take into considera-

tion not only the age and sex of the child, but its prior custody and all other facts and circumstances affecting the welfare and best interests of the child. Jeppson v. Jeppson, supra. It is far better for a child of innocent years to live among the people and with the attachments formed in childhood than to be torn away from familiar scenes, friendly faces and kindly voices, to be cast into a strange environment. In this case the grandmother is better fitted than the father, under the evidence now before the court, to have the custody of a girl of tender years, whom she has cared for and had living in her home for nearly seven years last past. While under the record both parties to this action are fit and proper persons to have custody of the child, material advantages are presented for the child to remain where she is, and in our opinion she will be reared, trained and cared for best by a woman—in this case the appellant—rather than the father, as he is unable to properly care for a young girl.

■ Where best interest of a minor child will be served by giving it into custody of grandparents, rather than to a parent, such will be done. Fleck v. Fleck, 31 Wash.2d 114, 195 P.2d 100. See also Hart v. Howell, 154 Fla. 878, 19 So.2d 317.

■ We therefore conclude from the record before us at this time that it was an abuse of discretion not to award the child to the appellant.

The writ of habeas corpus is quashed, and the decree reversed and cause remanded with instructions to the trial court to make the proper findings and decree in accordance with this opinion. Costs to appellant.

TAYLOR, C. J., and KEETON, PORTER and SMITH, JJ., concur.