No. 42,110

(Mary Lou Robben, Deceased.) Louis E. Roberts, Jr., *Appellant,*
v. Robert A. Robben, *Appellee.*

(362 P. 2d 29)

Opinion filed May 13, 1961.

*Hugh D. Mauch,* of Great Bend, argued the cause, and *Melvin O. Nuss* and *Vernon L. Nuss,* both of Great Bend, were with him on the briefs for the appellant.

*George R. Lehmberg*, of McPherson, argued the cause, and *J. R. Rhoades*, of McPherson, was with him on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: On September 25, 1946, Mary Lou Robben obtained a decree of divorce from Robert A. Robben in the district court of McPherson county. The court awarded the custody of their minor child, Linda Kay, to the mother, and ordered the father to pay $40 a month as child support. Thereafter, the mother took Linda Kay and moved to Ohio, where they resided until the mother's death October 30, 1957. At that time and at all times subsequent thereto, the father was a resident of Colorado. After the death of her mother, Linda Kay, then sixteen years of age, returned to Kansas to reside with her uncle, Louis E. Roberts, Jr., who was appointed guardian of Linda Kay's estate in a proceeding in the probate court of Barton county on December 24, 1957.

On August 12, 1959, Louis E. Roberts, Jr. (appellant herein), filed a motion in the original divorce action between Mary Lou and Robert A. Robben in the district court of McPherson county, alleging that he had been appointed guardian of the estate of Linda Kay by the probate court of Barton county, and that Robert A. Robben was the natural father of the minor child and had failed, since the death of Linda Kay's mother, to pay any child support for more than a year. He asked for the accrued back payments and that the future child support payments be increased to $100 a month.

Robert A. Robben, defendant (appellee), the father of Linda Kay, appeared specially and filed a motion to strike from the files in the divorce action Roberts' motion to increase the child support payments for the reason that he, the father, was a resident of Colorado; that venue was in Denver county, Colorado; that the motion of Roberts disclosed on its face that he had no right to file the same, and that the district court had no jurisdiction over the subject matter thereof. The motion to strike was overruled and the father filed his answer, in which he alleged that he was the father and the natural guardian of Linda Kay, a minor; that he was a resident of Colorado and the lower court had no jurisdiction over him, Linda Kay or the subject matter of the motion filed by Roberts, and that at all times since the death of Mary Lou Robben, his former wife and the mother of Linda Kay, he had offered to support and maintain Linda Kay, provided she made her home with him; that he had on numerous

occasions requested Linda Kay to do so, but she had refused; that he, as the father and natural guardian of Linda Kay, was entitled to the control of her; that he had never been charged or found to be a person unfit to have custody of her; that under the laws of this state and those of Colorado he was entitled to custody of her, and that Linda Kay had never been declared a dependent and neglected child but had chosen to reside with her uncle, Louis E. Roberts, Jr. Roberts replied with a general denial.

The trial court heard the evidence and found at the conclusion thereof that it had no jurisdiction over the matter, from which order Roberts appeals. We find it necessary to first determine the validity of Roberts' appointment as guardian and his right to maintain this proceeding.

By statute, the father and the mother are natural guardians of the person of their child. If either dies, the natural guardianship devolves upon the other (G. S. 1949, 59-1802; *May v. May*, 162 Kan. 425, 176 P. 2d 533; *In re Vallimont*, 182 Kan. 334, 338, 321 P. 2d 190). The surviving parent then has the right to custody of the child (2 Beale, Conflict of Laws, § 144.2, p. 717), and the welfare of the child is best served by leaving it with its natural guardian unless it is demonstrated that the parent is unfit to discharge the duties which are correlative to his right (*Denton v. James*, 107 Kan. 729, 193 Pac. 307; *May v. May*, supra; *In re Hollinger*, 90 Kan. 77, 132 Pac. 1181).

We have not overlooked the fact that Linda Kay was, at the time of her mother's death, domiciled in Ohio and that as a result of that fact Ohio law would govern as to who became her natural guardian. Under G. S. 1949, 60-2878, we should take judicial notice of Ohio law, but we have not been favored by counsel with any authorities thereon. In such a situation, we are of the opinion that we may safely assume Ohio law is the same as that of Kansas with reference to this matter of natural guardianship. See *Seemann v. Eneix*, 272 Mass. 189, 195, 172 N. E. 243.

In the original divorce proceeding the father was not found to be unfit to have the custody of the child nor is it alleged in this proceeding that he is unfit. The natural rights of the father were not completely annulled by the order in the divorce proceeding awarding the custody of the child to the mother; they were suspended for the time being but were revived in full force by the

mother's death (*In re Hollinger*, supra, p. 79; *In re Vallimont*, supra, p. 336; *Denton v. James*, supra).

Under the laws of this state, there is no question but that upon the death of the mother, the father, being the natural guardian of Linda Kay, was entitled to her custody. Therefore, the domicile of Linda Kay's father (Colorado) then became hers. It is well settled that a minor has no capacity to select a domicile or place of residence of his own. The place of residence of the father, the mother being dead, is what the law regards as the place of residence of the minor. (*Jaggar v. Rader*, 134 Kan. 570, 7 P. 2d 114; *Trammell v. Kansas Compensation Board*, 142 Kan. 329, 46 P. 2d 867.)

It is also true that the domicile of Linda during her minority continues to be that of her father. The fact that a child lives apart from the father, whether or not with permission of the father, is immaterial. The child has no power to acquire a domicile of choice, nor can the father fix the domicile of the child at any place other than that at which he has his domicile. (Restatement of the Law, Conflict of Laws, § 30, p. 55; *Trammell v. Kansas Compensation Board*, supra.)

The place of residence of the father being in Colorado, that state is, in law, the place of residence of Linda Kay. The probate court of the county of the minor's legal residence is the only probate court which has jurisdiction to appoint a guardian for the minor's estate. Inasmuch as Linda Kay at no time had a place of residence or a domicile in Barton county, the attempted appointment by the probate court of that county of Louis E. Roberts, Jr., as guardian of the estate of Linda Kay was ineffectual. (*Jaggar v. Rader*, 134 Kan. 570, 573, 7 P. 2d 114.)

While the district court of McPherson county had jurisdiction over the matter of Linda Kay's support and maintenance, Louis E. Roberts, Jr., his appointment being ineffectual, was a stranger to the action and had no authority to file the motion or to maintain the proceeding therein, and the trial court properly denied relief. It appears from the record that the father is willing to support Linda Kay if she will live with him in Colorado. When a father has custody of the child, is willing to support it in his own home and has not been found to be unfit, the fact that the child lives elsewhere does not mean the father must pay some stranger for its support. We find no error in the effect of the trial court's order, and the judgment is affirmed.

It is so ordered.