414 P.2d 892

**Robert C. CLARK, Petitioner-Appellant,**

**v.**

**Paul JELINEK, Respondent-Respondent.**

**No. 9797.**

Supreme Court of Idaho.

May 31, 1966.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for appellant.

Reed J. Bowen, Idaho Falls, for respondent.

McQUADE, Justice.

In 1959 Robert C. Clark, petitioner-appellant herein, married Judith Clark (Jelinek).

Two children, the subjects of this action, were born of this marriage. In 1962 the Clarks were divorced in Idaho (although the record is not clear, it appears that the Clarks were married in Idaho and until the divorce were residents and domiciliaries of Idaho). Mrs. Clark was awarded custody of the children. Shortly thereafter, Mrs. Clark married one Chamberlain; this marriage was soon annulled because Chamberlain was already married at the time of his marriage to Mrs. Clark. In May 1963 Mrs. Clark married Paul Jelinek, respondent herein. A child, a half sister of the two Clark children, was born of this marriage. In November 1963 the Jelineks moved to Connecticut with the two Clark children and lived there until Mrs. Jelinek was untimely killed in an automobile accident in July 1965. Mr. Jelinek and the two young children returned to Idaho to attend the funeral of Mrs. Jelinek. On July 27, 1965, the children were taken to Portland, Oregon, by Jelinek's aunt and uncle, where they were to await the arrival of Jelinek, at which time he and the children were to return to their home in Connecticut. On July 28, 1965, Clark obtained a writ of habeas corpus for Jelinek to show cause why the children should not be returned to Clark, their natural father. Jelinek was served personally in Idaho and appeared in person at the hearing. Upon the return to the writ and the hearing held thereon, the district court quashed the writ and ordered the custody of the children to remain with their stepfather, Jelinek. From that judgment Clark appeals.

At the outset we are faced with a challenge to the jurisdiction of the district court to determine the custody of the children. Respondent contends that because the children were not present in Idaho nor residents of Idaho at the time the action was commenced, the court did not have jurisdiction over the children for the purpose of determining their status. We disagree.

 Mrs. Jelinek was awarded custody of the chilrden when she was divorced from Clark. Thus, when she moved to Connecticut and established residence and domicile therein, the domicile of the children followed that of their mother. Clemens v. Kinsley, 72 Idaho 251, 239 P.2d 266 (1951). However, when Mrs. Jelinek died, the domicile of the children by operation of law reverted to that of their surviving parent, Mr. Clark. Baram v. Schwartz, 151 Conn. 315, 197 A.2d 334 (1964); In re Skinner's Guardianship, 230 Iowa 1016, 300 N.W. 1, 136 A.L.R. 907 (1941); In re Robben, 188 Kan. 217, 362 P.2d 29 (1961); Peacock v. Bradshaw, 145 Tex. 68, 194 S.W.2d 551 (1946); In re Thorne, 240 N.Y. 444, 148 N.E. 630 (1925). Since Mr. Clark's domicile at the time of his former wife's death was in Idaho, the domicile of the children thereafter was also Idaho despite the fact that they neither lived nor were present in

this state. Because minors may not choose their own domicile, Restatement, Conflict of Laws § 30 (1934), Idaho became their domicile by operation of law. In such circumstances where the children and their natural father were domiciled in Idaho and the only other person seeking their custody was personally served within Idaho and appeared personally at the hearing below, the Idaho courts have jurisdiction to determine custody of the children. See May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); Stephens v. Stephens, 53 Idaho 427, 24 P.2d 52 (1933); Anno. 9 A.L.R.2d 434.

■■ We come now to the question of who should be awarded custody of the two children. As a general rule natural parents have the absolute legal right to the custody of their minor children. I.C. § 15–1805;[1] I.C. § 32–1007;[2] Schiller v. Douglas, 48 Idaho 803, 285 P. 1021 (1930). However, after the parent-child relationship is established, the prima facie right of the parent to custody may be defeated by competent proof that the natural parent has forfeited or abandoned his right or that the parent is not a fit and proper person to have

custody of the child. Moss v. Vest, 74 Idaho 328, 262 P.2d 116 (1953).

In this case the trial court concluded that Clark:

" * * * abandoned, waived, surrendered, transferred, or forfeited his right to demand custody of the said children."

Briefly, the facts upon which this conclusion is based are as follows: The divorce decree obtained by Mrs. Clark (Jelinek) required Clark to pay $90 per month for the support and maintenance of the children. From the time of the divorce in October 1962 until July 1, 1963, there is evidence that Clark paid only $50 to Mrs. Clark. Clark testified that he sent a little more to his ex-wife by money orders but could not produce any evidence to prove these payments. During this nine-month period Clark did not visit or communicate with his children.

In July 1963, upon his return to Idaho, Clark requested custody of the children for the six weeks permitted him by the divorce decree. Mrs. Clark, who by this time had married Jelinek, refused because Clark was in arrears on the support payments. They thereafter effectuated a complete settlement

---

1. "15–1805. Parents entitled to guardianship.—Either the father or mother of a minor, being themselves respectively competent to transact their own business, and not otherwise unsuitable, must be entitled to the guardianship of the minor."
2. "32–1007. Rights of parents over children.—The father and mother of a legitimate unmarried minor child are equally entitled to its custody, services and earnings. If either the father or mother be dead or be unable or refuse to take the custody or has abandoned his or her family, the other is entitled to the child's custody, services and earnings."

of the debt whereby Clark paid $180 to Mrs. Jelinek. He then took custody of the children for most of the next six weeks during that summer.

Shortly thereafter, in November 1963, the Jelineks moved to Connecticut with the two children. Jelinek admitted that neither he nor his wife ever communicated this fact directly to Clark and that Mrs. Jelinek did not at any time thereafter request the $90 per month support payments from Clark. From the time of the settlement with Mrs. Jelinek of the back support in July 1963 until her death in July 1965, Clark paid no further support money for the welfare of the children, although he admitted he was financially able to do so. Neither did he in any way communicate or attempt to communicate with the children. Clark claims this was because he did not know where they were. Presuming this was true,[3] Clark did not inquire as to their whereabouts. Mr. Pearson, Mrs. Jelinek's father and Clark's former father-in-law, lived in Idaho Falls, Idaho, the same city as Clark. Clark knew that Mr. Pearson lived nearby.

■ We think these facts are sufficient to sustain the trial court's finding that Clark abandoned his children. "Abandonment may be shown by facts and circumstances as well as by direct evidence." Finn v.

Rees, 65 Idaho 181, 141 P.2d 976 (1943). It is true, as appellant contends, that this court has previously stated that nonsupport and abandonment are not necessarily synonymous and that nonsupport, in and of itself, does not constitute abandonment. Application of Altmiller, 76 Idaho 521, 285 P.2d 1064 (1955); Smith v. Smith, 67 Idaho 349, 180 P.2d 853 (1947). These statements, however, were made with a view toward a reasonable explanation by the delinquent parent of circumstances which would warrant an excuse for the nonsupport. In the Smith case we quoted from In re Kelly, 25 Cal.App. 651, 145 P. 156, 158 (1914):

> "It is not difficult to conceive of circumstances wholly beyond the control of parents having the deepest affection for their children which would render it impossible for them to support their children or care for them in a proper way. It would, indeed, be a harsh rule which would, under such circumstances, authorize a judicial determination by which the natural right of the parents to the custody and control of their children would be forever severed." 67 Idaho at 353, 180 P.2d at 855.

In Application of Altmiller the court said that the poverty of the parent was established by the record.

---

3. Mr. Pearson, Mrs. Jelinek's father and Clark's former father-in-law, testified that he occasionally informed Clark's sister and mother as to the welfare of the children and their location. Clark testified that his sister and mother never related this information to him, nor did he inquire.

The trial court's conclusion that Clark abandoned his children is further supported by statutory definitions of abandonment. I.C. § 16–1625(i) (Supp.1965) states:

"i. 'Abandoned' means the failure of the parent to maintain a normal parental relationship with his child, including but not limited to reasonable support or regular personal contact. Failure to maintain this relationship without just cause for a period of one (1) year shall constitute prima-facie evidence of abandonment."

See also I.C. § 16–2005(a) (Supp.1965).

■ No inflexible rule can be laid down by which abandonment may be determined. Each case must be decided on its own particular facts. In the instant case, although Clark testified that he was in some financial difficulty, he stated that he earned $7,200 and $6,900 in 1963 and 1964. He admitted that after the Jelineks moved to Connecticut, "There was enough money there at the time to pay the child support, there's no excuse for this." We agree with the trial court that Clark's willful failure to provide the required support for his two minor children and his disinterest in attempting to communicate with them for 18 months is sufficient to show that he abandoned his children. Such evidence also meets the test established in Moss v. Vest, supra:

"There can be no abandonment without a specific intent to sever all correlative rights and duties incident to the relationship of parent and child." 74 Idaho at 334, 262 P.2d at 119.

The judgment is affirmed.

Costs to respondent.

TAYLOR and SPEAR, JJ., concur.

McFADDEN, Chief Justice, with whom SMITH, Justice, concurs (dissenting):

It is my conclusion that the judgment quashing the writ of habeas corpus in this action should be reversed and the cause remanded for a new trial, for the following reasons.

The trial court concluded that appellant is "unsuitable for the custody of the minor children," and that he "had abandoned, waived, surrendered, transferred, or forfeited his right to demand the custody of said children."

In the first instance there was no proof adduced that at the time of the hearing in this cause appellant was "unsuitable" to be awarded the custody of the minor children. Moss v. Vest, 74 Idaho 328, 335, 262 P.2d 116; Nelson v. Standefer, 87 Idaho 83, 390 P.2d 838. No evidence was presented by either party as to his suitability, other than his financial condition. The trial court in its findings of fact recited that appel-

lant was the only witness to testify on his behalf; also that while appellant's wife was present to testify as to her attitude, she did not do so. Thus it would seem that the trial court must have been under the impression that the burden of proof was on the appellant to establish his suitability. This is not the law. In Moss v. Vest, supra, this court stated:

> "As a general rule, parents have a natural and legal right to the custody of their minor children. When such relationship is established a prima facie case has been made and the burden is then upon the other party to overcome such prima facie case by showing that the natural parent or parents have forfeited such right, or at least that such parent or parents are not fit and proper persons to have custody. Schiller v. Douglas, 48 Idaho 803, 285 P. 1021; Jain v. Priest, 30 Idaho 273, 164 P. 364; In re Crocheron's Estate, 16 Idaho 441, 101 P. 741, 33 L.R.A., N.S., 868; Andrino v. Yates, 12 Idaho 618, 87 P. 787; Sec. 15–1805, I.C.; 67 C.J.S., Parent and Child, §§ 11(a), 11(c), and 13(f), pp. 634, 640, and 673."

As to the question presented by the conclusion that appellant had abandoned his children, discussed in the majority opinion, the trial court did not make any finding that appellant had wilfully or intentionally intended any relinquishment of his rights to the custody of his minor children. Here again, the burden of proof in this regard was on the respondent. Moss v. Vest, supra. The only findings of fact tending to establish the basis for this conclusion of law are the finding that appellant had failed to make any support payments since July, 1963, and that he did not visit the children since October, 1963, and the finding that appellant had the ability to provide for the minor children and to furnish adequate support and maintenance for them, but wilfully refused to do so.

The record shows that appellant had the children in his home in Idaho Falls for a period of six weeks following settlement with his former wife of past due payments for their support. (See: Andersen v. Andersen, 89 Idaho 551, 407 P.2d 304, which held that as between the parties, a former wife may, for sufficient consideration, release the former husband from the obligation to make support payments previously decreed.) During this six week period, respondent and his wife, the mother of the children, had them on week-ends only. During this six week period when the children were with appellant, he was providing them with support. Whether the decree of divorce required payment of support moneys during the periods when the children were with their father is unknown, for while a copy of the decree of divorce, was offered into evidence as an exhibit, no ruling was made on it, and in any event no copy of the decree was submitted to this court as an exhibit. The record also shows

that shortly after appellant had the children with him, respondent, a member of the United States Navy, assigned to submarine duty, was transferred to the submarine base at Groton, Connecticut, and that his wife and the children, went to Connecticut, without any notice to appellant as to their whereabouts. It is contended that appellant could have ascertained where the children were, had he inquired of his former wife's father or other relatives, but the record shows without refutation that a broad schism arose between appellant and his former father-in-law and the other members of his former wife's family. It is also contended that appellant's relatives were advised as to the whereabouts of appellant's children, but even so, the record shows appellant did not get notice of their whereabouts until the untimely death of his former wife, Mrs. Jelinek, in July, of 1965. If appellant is to be charged with constructive notice of the whereabouts of the minor children and failure to support or to visit with them, during that time, the trial court should have established a time when appellant would have been chargeable with this information. It is not to be inferred that the author of this opinion in any way condones the failure of appellant to make the payments for the support of his minor children during this period of time, but it has been stated by this court that non-support is not synonymous with abandonment. Atmiller v. Forsman, 76 Idaho 521, 285 P.2d 1064. In Smith v. Smith, 67 Idaho 349, 353, 180 P.2d 853, this court quoted with approval from In re Kelly, 25 Cal.App. 651, 145 P. 156, 158, as follows:

" * * * If the rule were otherwise —that is, if an adjudication of abandonment could legally be predicated on the mere failure by the parent to support their minor children—the result, in innumerable instances, would be to work a manifest wrong upon parents. It is not difficult to conceive of circumstances wholly beyond the control of parents having the deepest affection for their children which would render it impossible for them to support their children or care for them in a proper way. It would, indeed, be a harsh rule which would, under such circumstances, authorize a judicial determination by which the natural right of the parents to the custody and control of their children would be forever severed."

Another fact deemed of importance is that neither the childrens' mother, nor respondent, felt any necessity to call upon appellant for support. He testified:

"Q. Now, may I ask, do you know of any occasions since you have gone to Connecticut where Mrs. Jelinek made any demand upon Mr. Clark for support money?

A. No, I don't.

Q. Isn't it correct that as far as you know she never did make such a demand?

A. She never did. There was never any need to. I could support the children.

Q. And you concurred in that decision of hers not to make a demand, did you not?

A. To an extent, yes.

Q. You never asked her to, nor did you—

A. (interrupting) No.—

Q. —expect her to, did you?

A. We never had any reason to.

Q. So, the arrangement that you lived under was something that you had decided was best and Mrs. Jelinek had decided was best for the children, isn't that correct?

A. Yes, for the children."

Moreover respondent recognized that appellant had not relinquished any claim to custody of his children, for respondent testified:

"I had—my wife and I had discussed the possibility of adoption, and I wanted to adopt the daughters, and I wanted to start adoption proceedings prior to this time. However, my wife and I both felt that Bob Clark would never give his permission for it."

The majority opinion refers to I.C. §§ 16–1625(i) and 16–2005(a) as supporting the trial court's conclusion that appellant abandoned his children. I.C. § 16–1625(i) defines the term "abandoned" for the purpose of the "Child Protective Act" (S.L. 1963, Ch. 321) only, for the definitions contained in I.C. § 16–1625 are all prefaced by the term "As used in this act". I.C. § 16–2005(a) is part of the act (S.L.1963, Ch. 145), establishing in the probate court a proceeding for the termination of a parent and child relationship. The referred to subsection, I.C. § 16–2005(a), by its own terms states that it constitutes "prima facie evidence of abandonment under this section". Thus in each instance the definitions of the term, "abandoned" or "abandonment" is by the statute limited to proceedings under the respective acts. Those standards should not be applied or considered in proceedings other than those wherein they are made specifically applicable.

Instead of applying provisions of the above referred to sections, in habeas corpus proceedings involving the custody of minor children, this court has stated the rule to be that the evidence must be satisfactory, decisive or convincing that the parent intended to abandon and desert his children. Moss v. Vest, supra.

I.C. § 15–1805 recognizes the right of a father to the guardianship of his children, if he is competent to transact his own business and is not otherwise unsuitable. I.C.

§ 32–1007, provides in effect the parents of a minor child are equally entitled to the child's custody, services and earnings. Those sections of the statutes are not to be lightly considered.

Appellant is the natural father of these children. When they came back to Idaho he sought to regain their custody. The writ of habeas corpus was served on respondent, and on the day set for the hearing, appellant for the first time was advised by respondent's *return* to his petition for the writ as to respondent's claims. The case went immediately to trial on July 30, 1965, and lasted only the one day. The trial court misapplied the law in this case as applied to facts; hence the judgment should be reversed. Justice, however, because of the lack of time for either party to adequately prepare for the hearing in this case, requires that a new trial be granted in order that the respective parties may properly frame the factual issues to be presented so as to bring before the court all the competent and material evidence they may desire in resolution of the factual issues.