# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36309-2009

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF PARENTAL RIGHTS AND ADOPTION OF:  JANE DOE, JOHN DOE.  (2009-02) | ) ) ) ) ) | Boise, February 2010 Term<br><br>2010 Opinion No.  21 |
| JOHN and JANE DOE I, | ) ) | Filed: March 16, 2010 |
| Petitioners-Appellants, | ) ) | Stephen W. Kenyon, Clerk |
| v. | ) ) | |
| JOHN DOE II, | ) ) | |
| Respondent. | ) ) | |

Appeal from the Magistrate Court of the Fourth Judicial District of the State of Idaho, in and for Ada County.  The Hon. O. Lynn Brower, Magistrate Judge.

The judgment of the magistrate court is <u>affirmed</u>.

Cosho Humphrey, LLP, Boise, for appellants.  Matthew R. Bohn argued.

Bauer & French, Boise, for respondent.  Charles B. Bauer argued.

_____

EISMANN, Chief Justice.

This is an appeal from a judgment dismissing a petition to terminate parental rights based upon a finding that the petitioners had failed to prove that the children's father had willfully failed to maintain a normal parental relationship with them.  We affirm the judgment.

## I.  FACTS AND PROCEDURAL HISTORY

Father and Mother were married on September 20, 1997, and divorced on January 12, 2004.  They had two children during their marriage:  a daughter who was about five and one-half years old at the time of the divorce and a son who was almost four years old.  The divorce decree awarded joint legal and physical custody of the children to Father and Mother, with Father

having overnight custody of the children about 35% of the time. Following the divorce, Father continued to have regular involvement with the children and to pay child support.

Although Father and Mother were divorced, they continued dating for several months. In April 2004, Father had a confrontation with Mother, during which he pushed her. He was charged with domestic battery, but the charge was later reduced to simple battery. He pled guilty, and Mother specifically requested that the court not enter a no contact order[1] so that Father could continue his regular contact with their children, which he did.

On September 11, 2004, Father engaged in a sexually explicit email "chat" with a person he believed to be a twelve-year-old girl. He made plans to meet her on September 13, 2004, in the town where she lived in order to engage in sexual conduct. When Father drove to that town to meet the twelve-year-old, he was arrested and charged with Internet Enticement of Children, a felony. The State later amended the charge to felony Injury to a Child, which avoided him having to register as a sex offender.

Father pled guilty to the amended charge, and on May 3, 2005, he was sentenced to ten years in the custody of the Idaho Board of Correction, with five years fixed and five years indeterminate. That sentence was suspended, and Father was placed on supervised probation for ten years. The conditions of probation included that he "at all times remain truthful with everyone with whom [he] deals" and that he "promptly enroll [in] and complete the SANE [Sexual Abuse Now Ended] program." The terms and conditions of the SANE program included that Father not have contact with any minor children, including his own, during the first three phases of the program. The program typically takes about three years to complete. Father did not tell Mother of these criminal charges until a few days after he was sentenced, when he informed her of what he had done and the terms and conditions of his probation.

Early in the program, Father received permission from SANE to have telephone contact with the children. Mother consented to him having limited telephone contact with the children twice, but she later revoked that consent. Father last saw the children on May 20, 2005, and he last spoke to them on September 20, 2005.

In August 2005, Mother filed a motion to modify the divorce decree by increasing child support, granting Mother sole legal and physical custody of the children, and permitting Father to

---

[1] A no contact order is an order forbidding contact with another person. I.C. § 18-920.

have contact with the children as permitted by his terms of probation. She suggested that it include monitored telephone conversations with the children. Father stipulated to the suspension of his visitation, and on February 6, 2006, the divorce court issued orders suspending Father's visitation rights with the children until further order of the court and modifying the divorce decree to increase child support from $363 per month to $437 per month.

After these orders were entered, Father and Mother continued to be in contact regarding issues such as toys for the children, day-care expenses, and medical insurance. Father promptly paid debts that were brought to his attention regarding the children.

Father's mother (Grandmother) frequently cared for the children before and after the divorce. After April 2006, Mother prohibited Grandmother from having any contact with the children and refused to deliver gifts from Grandmother to the children. In early January 2007, Mother agreed to permit Grandmother to have limited contact with the children, but Mother ended that contact in August 2007.

On December 16, 2005, the State filed a motion to revoke Father's probation, apparently because he was not truthful during a polygraph examination on November 29, 2005, in which he stated that he had had sexual contact with and sexual fantasies about the parties' daughter. In a subsequent polygraph examination, Father admitted that those admissions were false. Father testified that he made the false admissions because it was his understanding from talking with his counselors that he had to identify a victim of his sexual misconduct and there was no actual victim. He therefore made up the false admissions concerning sexual conduct with and fantasies about his daughter. The magistrate found, "There is no clear and convincing evidence that [Father] has ever committed a crime against his children, or attempted such an act with his own children."

When the motion to revoke probation was filed, Father's treatment at SANE was stopped. He admitted to violating his probation, and on September 12, 2006, his probation was reinstated. At that time, he was allowed back into the SANE program. Since then, he has complied with all of the requirements of the SANE program and has made substantial progress towards completion of the program. At the time of the trial, Father had completed the first three phases of the program and was in the final phase. On September 15, 2008, the conditions of his participation in the program were modified to permit him to have contact with his children if Mother was in full agreement. Absent Mother's agreement, Father cannot have any contact with the children as

3

long as he is in the SANE program. Mother has not agreed to allow Father to have contact with the children, and she testified that she would not allow him to see the children.

On January 19, 2008, Mother married Husband (jointly called Petitioners). Three days later, they filed a petition seeking to terminate Father's parental rights and to have Husband adopt them. Petitioners had started dating in early 2007, had commenced living together in May 2007, and had purchased a home together in June 2007.

This case was tried before a magistrate judge on January 20, 2009. The sole alleged ground for termination of Father's parental rights was that he had abandoned the children. On February 12, 2009, the magistrate entered his findings of fact and conclusions of law in which he determined that Petitioners had failed to prove abandonment by clear and convincing evidence. On the same date, the magistrate entered an order dismissing the petition. Petitioners timely sought permission to appeal directly to this Court and timely appealed to the district court. This Court granted their motion for a permissive appeal, the Petitioners filed an appeal directly to this Court, and their appeal to the district court was dismissed.

## II. ANALYSIS

The sole issue on appeal is whether the magistrate erred in finding that Petitioners had failed to prove by clear and convincing evidence that Father had abandoned the children.[2] The grounds for terminating parental rights are entirely statutory. *Doe I v. Doe*, 138 Idaho 893, 902, 71 P.3d 1040, 1049 (2003) ("I.C. § 16-2005, which is clear and specific as to the intent necessary to show abandonment, supercedes the common law standard as set forth in *Moss* [*v. Vest*, 74 Idaho 328, 262 P.2d 116 (1953)]").

Petitioners sought to terminate Father's parental rights pursuant to Idaho Code § 16-2005(1)(a), which provides: "The court may grant an order terminating the [parent-child] relationship where it finds that termination of parental rights is in the best interests of the child and that one (1) or more of the following conditions exist: (a) The parent has abandoned the child." " 'Abandoned' means the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact." I.C. §

_____

[2] "The court's finding with respect to grounds for termination shall be based upon clear and convincing evidence . . . ." I.C. § 16-2009.

16-2002(5). The word "or" is a disjunctive particle used to express an alternative. *Frasier v. Frasier*, 87 Idaho 510, 514, 394 P.2d 294, 296-97 (1964). Thus, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, or the failure to have regular personal contact, or some other failure. In this case, the Petitioners contended that Father abandoned the children by failing to have regular personal contact with them.

Idaho Code § 16-2002(5) provides that "[f]ailure of the parent to maintain [a normal parental] relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment . . . ." "No universally applicable 'normal parental relationship' exists; whether such relationship exists depends on the circumstances of each case." *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). At the time of the trial on January 20, 2009, Father had not had any contact with the children since September 20, 2005. Therefore, Petitioners established prima facie evidence of abandonment. However, the magistrate found that Father had not *willfully* failed to maintain a normal parental relationship with the children. The magistrate based that finding upon a principle of law and a finding of fact.

The principle of law upon which the magistrate based its decision was stated by the magistrate as follows: "A separation of a child and parent due to misfortune and misconduct alone does not constitute abandonment. Forced absence, in itself, is insufficient to constitute abandonment and is merely one factor to be considered." The Petitioners contend that the magistrate misinterpreted the "willfully" requirement in Idaho Code § 16-2002(5). According to Petitioners, a parent has abandoned a child if the parent willfully does an action that has the unintended consequence of preventing the parent from maintaining a normal parental relationship with the child. Thus, Petitioners argue that Father abandoned the children when he willfully committed the crime to which he pled guilty, willfully chose probation rather than prison, and willfully accepted the terms of probation which required him to cease all contact with his minor children. According to Petitioners, the consequences of these "willful" choices resulted in Father willfully failing to maintain a normal parental relationship with his children. Petitioners' argument is contrary to our decision in *Doe v. State*, 137 Idaho 758, 53 P.3d 341 (2002).

In *Doe v. State*, Doe had been in prison since his son was born. We noted, "It is undisputed that at the time of the appeal, Doe had never seen his child, nor provided any type of

5

financial support for the child. . . . Doe had no relationship with the child for over two years." *Id.* at 761, 53 P.3d at 344. Not only had Doe engaged in willful conduct that resulted in a prison sentence (he was convicted of possession of cocaine), but after his son's birth he engaged in willful conduct that prevented his early release. When the district court sentenced Doe to prison, the court retained jurisdiction to give Doe an opportunity to complete what is called the "rider" program. Had he successfully completed that program, the district court may have suspended the balance of the prison sentence and placed Doe on probation. However, after his son was born, Doe failed the rider program because he had an "attitude." The magistrate court adopted the same analysis that Petitioners ask us to adopt in this case. It found "that the failure to complete the 'rider' program after the child was born demonstrated a lack of interest in the child." *Id.* at 761, 53 P.3d at 344. We rejected that reasoning and vacated the judgment terminating Doe's parental rights. In doing so, we stated as follows:

> There is an issue, however, of what actions Doe could have taken, once in prison, to maintain contact with his child. Doe sent his child gifts and made efforts to contact the child through the Department and through the child's maternal grandmother, but he was unsuccessful. One must ask what more could Doe have done? The Department's argument is that he could have completed the "rider" program successfully and gotten out of prison early. The magistrate accepted this as evidence of abandonment. That is not the type of substantial competent evidence that supports a finding by clear and convincing standard of abandonment.

*Id.* at 761-62, 53 P.3d at 344-45.

In order to prove that Father had abandoned the children, Petitioners had to prove by clear and convincing evidence that he had "*willfully* failed to maintain a normal parental relationship" with the children. I.C. § 16-2002(5) (emphasis added). For one to willfully fail to do something, he or she must have the ability to do it.

For example, in *Clark v. Jelinek*, 90 Idaho 592, 414 P.2d 892 (1966), the father and mother were divorced while residents of Idaho, and the mother was awarded custody of the children. She later married a man named Jelinek, and they moved to Connecticut. After the mother died in a traffic accident, the father brought an action to obtain custody of the children. The trial court ruled that the children should remain with their stepfather, Jelinek, and the father appealed. For the two years prior to the mother's death, the father had not paid any child support, nor had he attempted to communicate with the children. We held that the father's

6

failure to provide support when he had the ability to do so was willful. The father admitted, "There was enough money there at the time to pay the child support, there's no excuse for this." *Id*. at 599, 414 P.2d at 895. Based upon that admission, this Court held, "We agree with the trial court that Clark's [father's] *willful* failure to provide the required support for his two minor children and his disinterest in attempting to communicate with them for 18 months is sufficient to show that he abandoned his children." *Id*. (Emphasis added.) Although *Clark v. Jelinek* was decided before the 1994 amendment adding the requirement that a parent must have *willfully* failed to maintain a normal parental relationship, its reasoning shows that one does not willfully fail to do something unless he or she has the ability to do it.

In *Doe I v. Doe*, 138 Idaho 893, 71 P.3d 1040 (2003), we upheld the termination of parental rights of a father who had not had any contact with his child for over two years and who had voluntarily paid only $5.00 in support during a period of over five years. The father contended that there was insufficient evidence showing that he had *willfully* failed to maintain a normal parental relationship. With respect to the lack of support, we found willfulness based upon the fact that the father had the ability to pay support, but failed to do so. We stated:

> This negligible contribution, however, does not reflect a sincere desire to support the child and is evidence of *willfulness*. The record shows that he was employed enough to reasonably expect him to contribute to the support of the minor child. Even when he was not employed, he was receiving social security benefits for at least some period and did not voluntarily distribute some of those benefits to the minor child.

*Id.* at 901, 71 P.3d at 1048 (emphasis added). The father also argued that his lack of contact with his child was due to his bipolar condition and periods of depression. We rejected that argument based upon evidence that such condition did not inhibit his ability to have contact with his child. We stated, "However, other witnesses testified that his condition did not severely inhibit his ability to function, and that he seemed like a 'normal guy.'" *Id*. We concluded that "there is substantial and competent evidence to support the finding of the trial court that this condition did not provide a justifiable excuse." *Id*. We also upheld the trial court's finding that "whenever [the father] wanted to make contact with the child, he was able to do so." *Id*. at 907, 71 P.3d at 1054.

In *In re Adoption of Doe*, 143 Idaho 188, 141 P.3d 1057 (2006), we reversed an order terminating a father's parental rights based upon the lack of evidence that the father's failure to

pay reasonable support for and to have regular personal contact with his daughter were willful. The mother and father were living in Lewiston, Idaho, when they married in January 2001, but they then moved to Phoenix, Arizona. They separated in July 2001, and Mother filed for divorce in Arizona. Their daughter was born there in January 2002. In March, Mother moved with their daughter back to Lewiston, where her family was. In May 2004, the mother and her father filed a petition to terminate the parental rights of the child's father. The magistrate granted the petition on the ground that the child's father had abandoned the child because he had willfully failed to provide reasonable support and to maintain regular contact. We reversed on the ground that the evidence did not show that the father's failure was willful.

The magistrate found that the father had not voluntarily paid any support and that what sums had been paid came from the garnishing of his wages. The magistrate concluded, "This 'negligible contribution' . . . did not reflect a sincere desire to support daughter and was evidence of willfulness." *Id*. at 190, 141 P.3d at 1059. We reversed because the trial court had failed to consider the father's ability to pay the support. We noted, "But the judge did not note in his decision that father missed seven months of work due to injury, nor did he discuss father's ability to pay relative to his income and expenses." *Id.* at 192, 141 P.3d at 1061.

The magistrate also found that "father had no contact with daughter between October 2003 and November 2004, and that there was only sporadic contact before then." *Id*. at 190, 141 P.3d at 1059. In reversing, we again noted the lack of any consideration of the father's ability to maintain regular contact with his daughter. We pointed out that in the magistrate's findings "[t]here was no discussion of the financial and logistical difficulties with traveling [1,400 miles] from Phoenix to Lewiston." *Id*. at 192, 141 P.3d at 1061.

Thus, our cases show that a parent does not *willfully* fail to maintain a normal parental relationship unless the parent has the ability to do so and does not. Even if one has the ability, there can be "just cause" for such failure. For example, in *In re Adoption of Doe*, the father had no contact with his daughter between October 2003 and November 2004. She was one year old in 2003 and two years old in 2004. Although the father could have sent her letters and cards and telephoned her, we noted, "The judge also failed to consider the fact that daughter's young age tends to lessen the meaningfulness of cards and letters, let alone phone conversations." 143 Idaho at 192, 141 P.3d at 1061. Likewise, in *In re Matthews*, 97 Idaho 99, 104, 540 P.2d 284, 289 (1975), the father had the ability to visit his child, but we held that the magistrate should

8

have considered whether there was just cause for failing to do so where the father felt that insistence upon his visitation rights would be detrimental to the child because of the mother's hostility and prior attempts to frustrate any visitation.

The finding of fact upon which the magistrate based his decision was that Father lacked the ability to maintain a normal parental relationship with the children due to Mother's refusal to consent to his having contact with the children. Under the requirements of the SANE program, she was required to consent to any contact, even by telephone, and she has refused to do so. The magistrate found:

> The reality is that [Father] has been forbidden to have any contact with his children both by the terms of the SANE program requirements, and by the expressed desire and intent of [Mother], who has rebuffed the efforts of SANE Solutions to allow contact, since September, 2008.
> . . . .
> Similarly, in the present matter, not only was [Father] prohibited from any contact by the terms of his probation and treatment program, the evidence is uncontradicted that the children's mother has actively opposed any contact between the children and their father even when his treating therapists have expressly advocated for contact to be permitted. She should not be permitted to sustain a claim of abandonment under these circumstances, where the continued separation between the children and their father is squarely on her shoulders, at least since September, 2008 when the SANE addendum letter was issued.

Petitioners point out that during the ten-month period that Father was not in the SANE program, he still did not have any contact with the children. It is unclear how he could have done so. During that period, his visitation rights with the children were still suspended by court order, and Mother had previously terminated his telephone contact. The magistrate's finding that the Petitioners failed to prove by clear and convincing evidence that Father had willfully failed to maintain a normal parental relationship with the children is supported by substantial and competent evidence.

### III. CONCLUSION

The judgment of the magistrate court is affirmed. We award costs on appeal to respondent.

Justices BURDICK, J. JONES, W. JONES and J. Pro Tem TROUT **CONCUR**.

9